Argued and submitted August 30, 1993, decision of the Court of Appeals affirmed in part and reversed in part; order of the Court of Appeals allowing attorney fees, costs, and disbursements reversed; order of the circuit court awarding plaintiff attorney fees and costs reversed and case remanded to the circuit court for further proceedings April 7, 1994

Joe GRIFFIN,
by and through Doug Stanley,
Personal Representative of the
Estate of Joe Griffin, Deceased,
*Respondent on Review,*

*v.*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
an Oregon municipal corporation,
*Petitioner on Review,*

*and*

James COWEN
and Donald Denson,
*Defendants.*

(CC A8902-01014; CA A64191; SC S39510, S40017)
870 P2d 808

Jeffrey M. Batchelor, Portland, argued the cause and filed the petitions for petitioner on review.

Lori Irish Bauman, Portland, argued the cause and filed the responses for respondent on review.

David K. Allen, Jennifer Kimble, and Shawn Koch, Salem, filed a brief for *amicus curiae* Cascade Aids Project, Inc.

John Paul Graff, of Graff & O'Neil, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

James N. Westwood, of Miller, Nash, Wiener, Hager & Carlsen, Portland, filed a brief for *amici curiae* Portland District 1J, League of Oregon Cities, Association of Oregon Counties, and Oregon School Boards Association.

Before Carson, Chief Justice, Peterson,** Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GILLETTE, J.

Unis, J., dissented and filed an opinion in which Van Hoomissen, J., joined.

** Peterson, J., retired December 31, 1993.

## GILLETTE, J.

The issue in this case is whether the $100,000 liability limit in the pre-1989 version of the Oregon Tort Claims Act applies to attorney fees and costs awarded against a public body in an employment discrimination action that arose at the time that the limit was in effect. We hold that the limit applies.

Defendant Tri-County Metropolitan Transportation District of Oregon (Tri-Met) is a municipal corporation that is subject to the Oregon Tort Claims Act (OTCA), ORS 30.260 to 30.300.[1] Plaintiff was employed by Tri-Met as a bus driver and dispatcher from 1976 to 1989. In 1989, plaintiff brought this action against Tri-Met, alleging that Tri-Met had engaged in an unlawful employment practice in violation of ORS 659.425(1).[2] A jury returned a verdict awarding plaintiff $500,000 in compensatory damages. Applying the liability limit in ORS 30.270(1)(b) (1985) (set out *infra*), the trial court entered judgment in the amount of $100,000. The trial court then ruled that the limit did not apply to an award of attorney fees and costs.[3] Consequently, the court, in a separate order, awarded plaintiff attorney fees and costs in excess of $200,000.

---

[1] ORS 30.265(1) provides in part that, "[s]ubject to the limitations of ORS 30.260 to 30.300, every *public body* is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties." (Emphasis supplied.) ORS 30.260(4)(b) defines "public body" to include "[a]ny city, county, school district or other political subdivision or *municipal or public corporation*." (Emphasis supplied.) The parties agree — as do we — that Tri-Met is a "public body."

[2] ORS 659.425(1) provides:

"For the purpose of ORS 659.400 to 659.460, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"(b) An individual has a record of a physical or mental impairment; or

"(c) An individual is regarded as having a physical or mental impairment."

Plaintiff claimed that Tri-Met discriminated against him because he was infected with Human Immunodeficiency Virus (HIV), the virus that causes AIDS.

[3] Plaintiff sought attorney fees and costs under ORS 659.121(2), the statute that provided the basis for the action. That statute provides in part:

"Any person claiming to be aggrieved by alleged violations of ORS * * * 659.415 to 659.435 * * * may file a civil action in circuit court to recover compensatory damages or $200, whichever is greater, and punitive damages.

Tri-Met appealed to the Court of Appeals, assigning various errors. Among other things, Tri-Met contended in the Court of Appeals that the trial court erred in awarding attorney fees and costs in addition to the $100,000 already awarded as damages. The Court of Appeals disagreed, holding that awards of attorney fees and costs were not intended to be included within the liability limit in the OTCA. *Griffin v. Tri-Met*, 112 Or App 575, 584, 831 P2d 42 (1992). We allowed Tri-Met's petition for review in order to address that issue.

While Tri-Met's petition for review was pending before this court, the Court of Appeals entered an order allowing plaintiff attorney fees, costs, and disbursements on appeal in the amount of $55,496.75. Tri-Met filed a second petition seeking review of the attorney fee and costs award in that order. We allowed review and consolidated the cases for argument and opinion.

We begin by clarifying why the pre-1989 version of ORS 30.270 applies to this case. Until 1987, ORS 30.270(1) provided:

> "Liability of any public body or its officers, employes or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 shall not exceed:
>
> "(a)   $50,000 to any claimant for any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence.
>
> "(b)   $100,000 to any claimant for all other claims arising out of a single accident or occurrence.
>
> "(c)   $300,000 for any number of claims arising out of a single accident or occurrence."

In 1987, the legislature amended ORS 30.270(1) to provide in part:

> "Liability of any public body or its officers, employes or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 shall not exceed:

---

* * * In any action brought under this subsection, the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal."

"'\* \* \* \* \*

"(b)  $100,000 to any claimant *as general and special damages* for all other claims arising out of a single accident or occurrence *unless those damages exceed $100,000, in which case the claimant may recover additional special damages, but in no event shall the total award of special damages exceed $100,000.*

"(c)  *$500,000* for any number of claims arising out of a single accident or occurrence."

Or Laws 1987, ch 915, § 13 (amendments emphasized). The 1987 amendments were to apply "only to claims that accrue on or after January 1, 1989." *Id.* § 14.

In this case, plaintiff argued in the trial court that the amended version of the statute should apply because, according to plaintiff, his claim did not "accrue" until after January 1, 1989. The trial court rejected that argument and applied the pre-1989 version of the statute. Plaintiff assigned that ruling as error on cross-appeal, but the Court of Appeals declined to consider plaintiff's argument because, according to that court, "plaintiff failed to raise this issue in any way in the court below." *Griffin v. Tri-Met, supra*, 112 Or App at 585.

The Court of Appeals was wrong factually; plaintiff *did* raise the issue in the trial court.[4] Plaintiff also raised the issue in this court in a supplemental response filed after this court had allowed Tri-Met's petition for review. We therefore address the issue.[5]

■  As noted, the 1987 amendments to ORS 30.275 apply "only to claims that *accrue* on or after January 1, 1989."

_____

[4] After the jury returned its verdict, the parties briefed and presented oral arguments on the form of the judgment. One of the issues argued was whether the 1987 amendment to ORS 30.270(1)(b) applied to plaintiff's action. Ruling on that issue, the trial court stated: "I'm of the opinion and so rule that the $100,000 limitation on damages does apply, and I think I can summarize my feelings by simply saying that I feel that the key, in my mind, is when the claim occurred."

[5] ORAP 9.20(2) provides in part:

"If the Supreme Court allows a petition for review, the court may limit the questions on review. If review is not so limited, the questions before the Supreme Court include all questions properly before the Court of Appeals that the petition *or the response* claims were erroneously decided by that court."

(Emphasis supplied.)

(Emphasis supplied.) Here, plaintiff has asserted a *single claim* of employment discrimination. The question, therefore, is whether that claim "accrued" on or after January 1, 1989. "When used with reference to a cause of action [the word 'accrue'] means when an action may be maintained thereon. [The claim] accrues whenever one person may sue another." *Berry v. Branner*, 245 Or 307, 312, 421 P2d 996 (1966) (emphasis deleted).

Plaintiff's fourth amended complaint alleges instances of discrimination by Tri-Met beginning in October 1987 and continuing through his allegedly unlawful termination in December 1989. Plaintiff contends that his claim did not accrue until his termination in December 1989. According to the complaint, however, plaintiff filed a parallel discrimination claim with the Bureau of Labor and Industries in 1988. Moreover, plaintiff filed his first complaint in the present action in February 1989. We need not decide which of the discriminatory events alleged by plaintiff caused his claim to accrue. It is sufficient here to hold that the claim had accrued at least by the time plaintiff filed his complaint with the Bureau of Labor and Industries; plaintiff's termination in December 1989 was not essential to the accrual of his claim. It follows that the pre-1989 version of ORS 30.270 applies to this case.

■ Before proceeding to the central issue, we address an argument raised by *amicus curiae* Oregon Trial Lawyers Association. *Amicus* argues that plaintiff's action was not subject to the OTCA at all, because engaging in an unlawful employment practice in violation of ORS 659.425(1) — the gravamen of this action — is not a "tort" within the meaning of the OTCA. For the following reasons, we disagree.

For purposes of the OTCA, a "tort" is

> "the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, * * * which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy."

ORS 30.260(8). This court has held that ORS 659.425(1) "imposes on an employer a duty to make reasonable accommodation for its employees' physical and mental impairments."

*Braun v. American International Health*, 315 Or 460, 470, 846 P2d 1151 (1993). That "duty to make reasonable accommodation" is a "legal duty that is imposed by law, other than a duty arising from contract or quasi-contract" within the meaning of ORS 30.260(8). Moreover, ORS 659.121 provides "a civil right of action for damages," ORS 659.121(2), and "for a protective remedy," ORS 659.121(1), for persons claiming "injury" due to violations of ORS 659.425(1). Accordingly, the unlawful employment practice that was the basis for this action constituted a "tort" within the meaning of the OTCA, and plaintiff's action was therefore subject to the provisions of the OTCA. *Cf. Urban Renewal Agency v. Lackey*, 275 Or 35, 38, 549 P2d 657 (1976) (holding that a state agency's breach of its statutory duty to assist individuals in reestablishing their business was a "tort" within the meaning of the OTCA).

■    We proceed next to the central issue in the case, namely, whether the $100,000 liability limit in ORS 30.270(1)(b) (1985) applies to attorney fees and costs awarded against a public body in an employment discrimination action. ORS 30.270(1)(b) (1985) provides that the *"[l]iability* of any public body * * * *on claims within the scope of ORS 30.260 to 30.300* [*i.e.*, the OTCA] shall not exceed * * * $100,000 to any claimant for all [non-property] claims arising out of a single accident or occurrence." (Emphasis supplied.) Plaintiff concedes that "[a] tort lawsuit against a public body is necessarily a 'claim' within the scope of the OTCA." Because the violation of ORS 659.425(1) alleged in this action was a "tort" within the meaning of the OTCA, *see supra*, 318 Or at 506, the present action was a "tort" action. Therefore, this action was necessarily a "claim within the scope of the OTCA." The only question remaining is whether, in limiting the "liability" of a public body on such a tort "claim," the legislature intended to limit attorney fees and costs awarded against the public body when the tort "claim" at issue is an employment discrimination action.[6]

---

[6] The Court of Appeals held that the OTCA "specifically covers only tort claims" and "does not include attorney fees and costs within the definition of a tort claim." *Griffin v. Tri-Met*, 112 Or App 575, 583, 831 P2d 42 (1992). According to the Court of Appeals, "[t]he tort claim in this case is the discriminatory conduct of the tortfeasor." *Id.* at 584. The error in that reasoning, as Tri-Met points out, is that the OTCA does not define the term "tort claim" at all. Rather, it defines the word "tort."

■     This court's duty in interpreting a statute is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We must, therefore, attempt to determine whether the legislature intended the limit on "liability" in ORS 30.270(1)(b) (1985) to apply to attorney fees and costs awarded against a public body in an employment discrimination action. As always, we begin our search for the legislature's intent with the text and context of the statute itself. *Id.* at 610-11. Context includes "other provisions of the same statute and other related statutes." *Id.* at 611.

As noted above, ORS 30.270(1)(b) (1985) imposes a $100,000 limit on a public body's "liability" in a case such as this. The word "liability" is not defined in the statute, or anywhere else in the OTCA. In interpreting a statute, however, "words of common usage typically should be given their plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries, supra*, 317 Or at 611. "Liability" commonly means, *inter alia*, a "duty to pay money or perform some other service," Black's Law Dictionary 914 (6th ed 1990), a "legal responsibility," *id.*, or "an amount that is owed," Webster's Third New International Dictionary 1302 (1976). As used in ORS 30.270(1)(b) (1985), then, "liability" must refer to the duty or legal responsibility to pay money on a tort claim. By imposing a $100,000 limit on a public body's "liability" in ORS 30.270(1)(b) (1985), the legislature limited the amount of money that a public body must pay to a claimant as the result of any "single accident or occurrence" that constitutes a "tort" within the meaning of the OTCA.

Plaintiff concedes that the $100,000 limit on "liability" in ORS 30.270(1)(b) (1985) is a limit on a public body's duty to pay money. Plaintiff argues, however, that the limit was meant to apply only to awards of tort damages, not to awards of attorney fees and costs. The statute, however, contains no such qualification. The statute provides that "[l]iability * * * shall not exceed * * * $100,000." The statute does not refer to "damages" at all. Had the legislature

---

*See supra* 318 Or at 506 (setting out the OTCA definition of "tort"). What the Court of Appeals describes as the "tort claim" is, instead, the "tort."

intended the limit on "liability" to apply only to liability for tort damages, it could have said so.[7]

Plaintiff points to the definition of "tort" in ORS 30.260(8) (*see supra*, 318 Or at 506) and argues that, because "a tort is specifically defined as a breach for which the law provides an action for 'damages[,]' [t]he question, then, is whether statutory attorney fees are tort damages." We disagree that that is the question to be answered in this case. The definition of "tort" in ORS 30.260(8) serves to establish what sorts of claims fall within the purview of the OTCA. As we have noted already, the employment discrimination alleged and proven by plaintiff in this case was a "tort" within the meaning of the OTCA. Therefore, this action based on that discriminatory conduct is a tort "claim" within the scope of the OTCA. The question that remains, *viz.*, whether attorney fees and costs awarded against a public body in such an action are subject to the $100,000 liability limit in ORS 30.270(1)(b) (1985), is not answered by looking to the OTCA's definition of the word "tort."

Other parts of the OTCA, however, support the conclusion that the monetary limit on "liability" contained in ORS 30.270(1)(b) (1985) was *not* intended to apply only to awards of tort damages. One obvious purpose of the OTCA was to allow public bodies to insure against potential liability for their torts. ORS 30.282 contains provisions allowing local public bodies to obtain insurance, to establish self-insurance funds, or to contract with the Department of Administrative Services to cover potential tort liability. The liability limits in ORS 30.270(1) (1985) facilitate the process of insuring against potential tort liability by fixing the amounts for which a public body may be held liable. ORS 30.270(1)(a) (1985) sets a $50,000 limit to any claimant on "any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence." ORS 30.270(1)(b) (1985) — the statute at issue in this case — sets a $100,000 limit to any claimant on "all other claims arising out of a single accident or occurrence." Finally, ORS

---

[7] For example, the present version of ORS 30.270(1)(b) expressly provides that "[l]iability of any public body * * * on claims within the scope of [the OTCA] shall not exceed * * * $100,000 to any claimant *as general and special damages*." (Emphasis supplied.)

30.270(1)(c) (1985) sets a $300,000 limit "for any number of claims arising out of a single accident or occurrence."[8] If amounts awarded against a public body as attorney fees and costs, rather than as damages, were excluded from the liability limits in the OTCA, the ability of a public body to determine with any certainty its potential liability for its torts would be diminished. It seems unlikely that the legislature would have intended to create such uncertainty when it imposed monetary limits on liability in the OTCA.

Furthermore, there is nothing in ORS 659.121(2), the statute under which the award of attorney fees and costs was made in this case, to support plaintiff's argument that the liability limit in ORS 30.270(1)(b) (1985) applies only to an award of damages against a public body and not to an award of attorney fees and costs. ORS 659.121(2) permits the award of "costs and reasonable attorney fees at trial and on appeal" to the prevailing party in an action brought under that statute. There is no question that public bodies are subject to employment discrimination actions brought under ORS 659.121(2).[9] However, nothing in ORS 659.121(2) or any other part of the Oregon civil rights law suggests that the legislature intended an award of attorney fees and costs against a public body in such an action to be exempt from the $100,000 liability limit in ORS 30.270(1)(b) (1985).

Other provisions also support the conclusion that the $100,000 liability limit in ORS 30.270(1)(b) (1985) was not intended to apply only to awards of tort damages against a public body. Plainly, the duty to pay attorney fees and costs as the result of a tort action is a "liability." For instance, ORS 20.130, which addresses a public body's duty to pay costs, provides that "the state or public corporation *is liable for* * * * costs and disbursements in like manner and with like effect as in the case of natural persons." (Emphasis supplied.) ORS 659.121(2), which authorized the specific award of attorney fees and costs in this case, does not refer expressly to

---

[8] As noted above, 318 Or at 504-05, the limit in ORS 30.270(1)(c) has been increased to $500,000.

[9] For purposes of the statutes prohibiting unlawful employment practices, ORS 659.010(6) defines "employer" to include "state agencies, political subdivisions and municipalities." Therefore, public bodies are subject to actions brought under ORS 659.121(2) based on unlawful employment practices.

"liability." However, inasmuch as ORS 659.121(2) constituted a waiver of the state's immunity to such an award, that waiver necessarily recognized a "liability" on behalf of the state. *See* Or Const, Art IV, § 24 ("Provision may be made by general law, for bringing suit against the State, as to all *liabilities* originating after, or existing at the time of the adoption of this Constitution" (emphasis supplied)). There is no logical basis for concluding that an award of attorney fees and costs made against a public body in a tort action is not part of the public body's "liability" in that action.

As plaintiff observes, ORS 20.107 provides another basis for awarding attorney fees and costs in an employment discrimination action such as the present one.[10] Like ORS 659.121(2), however, there is nothing in ORS 20.107 to indicate that such an award, when made against a public body, falls outside the $100,000 limit on "liability" contained in ORS 30.270(1)(b) (1985).

No statutory provision that we have found supports plaintiff's argument that the $100,000 limit on liability in ORS 30.270(1)(b) (1985) was intended to apply only to awards of tort damages. Nevertheless, because text and context are not entirely conclusive, we look to legislative history for guidance. *See PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611-12 (when text and context of statute do not make legislature's intent clear, court looks to legislative history). That history is most consistent with the conclusion that the liability limit in ORS 30.270(1)(b) (1985) was intended to apply to attorney fees and costs awarded against a public body in an employment discrimination action like the present one.

The OTCA, which originated as House Bill 1624, was enacted in 1967 and became effective in July 1968. Or Laws 1967, ch 627, § 14. By enacting the OTCA, the legislature gave "the state's consent to being held liable for tort claims."

---

[10] ORS 20.107 provides in part:

"(1) In any civil judicial proceeding, * * * a complaining party who prevails in a final binding judgment on a claim of illegal discrimination in violation of state * * * statute * * * shall be entitled to recover costs and disbursements, including attorney and expert witness fees reasonably and necessarily incurred in connection with the discrimination claim, at the trial court * * * and on appeal."

*Beaver v. Pelett*, 299 Or 664, 667, 705 P2d 1149 (1985). Even before the enactment of the OTCA, however, public bodies were subject to some liability for their torts. For instance, this court had held that, in authorizing school districts to purchase liability insurance, *former* ORS 332.180, the legislature "intended to provide that the district's [tort] immunity would be lifted to the extent * * * that its activities were in fact covered by insurance as authorized by the statute." *Vendrell v. School Dist. No. 26C et al*, 226 Or 263, 281, 360 P2d 282 (1961). Also, ORS 30.320 (later amended) provided that an action or suit could be maintained against certain public corporations "for an injury to the rights of the plaintiff arising from some act or omission of such * * * public corporation." This court had long interpreted that statute and its predecessor as permitting negligence actions against municipalities acting in a proprietary capacity, but not those acting in a governmental capacity. *See, e.g., Antin v. Union High School Dist. No. 2.*, 130 Or 461, 465-66, 280 P 664 (1929) (discussing proprietary/governmental distinction). Additionally, however, this court had held that "even, in the performance of a governmental act, if the municipality is guilty of active wrongdoing, there is no immunity for damages resulting from such active wrongdoing." *Adams v. City of Toledo*, 163 Or 185, 191, 96 P2d 1078 (1939); *see generally* Phillips, *"Active Wrongdoing" and the Sovereign-Immunity Principle in Municipal Tort Liability*, 38 Or L Rev 122 (1959) (discussing principle).

In effect, then, the OTCA did not create, so much as rearrange, governmental tort liability. Lansing, *The King Can Do Wrong! The Oregon Tort Claims Act*, 47 Or L Rev 357, 357-59 (1968). The tort liability that preexisted the OTCA was, for the most part, not subject to monetary limits. *But see, e.g., Vendrell v. School Dist. No. 26C et al, supra*, 226 Or at 281, 285 (school district liable only to extent of liability insurance coverage). In its initial form, House Bill 1624 left this unlimited liability intact. At the first hearing on the bill in the House Committee on State and Federal Affairs, however, a government witness called the committee's attention to Senate Bill 431, a comparable bill in the Senate that contained limits on liability. Minutes, House Committee on State and Federal Affairs, March 13, 1967, p 3. The witness stated that "it would make determining of insurance premium[s] easier if there were definite limits to the amount of liability." *Id.*

At a later hearing in the House Committee on Judiciary, further testimony was taken regarding the need for liability limits in House Bill 1624. A representative of the Association of Oregon Counties stated that the counties "would like to know what their liabilities are going to be and set limitations." Minutes, House Committee on Judiciary, May 10, 1967, p 5. The city attorney for Salem testified that "there are many small cities in the state that will be in opposition to a bill with no limitations. They are fearful of a large verdict which would bankrupt them." *Id.* at p 6. Finally, the city attorney for Portland "strongly urged a limitation because common belief is that public money is manna from heaven and doesn't cost anything." *Id.*; *see also* Exhibits p 5 (statement by City of Eugene: "[I]nsurance costs would be tremendous because [the bill] does not state a limit. Want to stress need for limit."). Later, the bill was revised to include monetary limits on liability, and the bill was enacted with those liability limits in place.[11]

The foregoing excerpts from the legislative history demonstrate that the legislature included liability limits within the OTCA to ensure fiscal stability for public bodies and to facilitate the purchase of liability insurance by those bodies by establishing certain limits on monetary liability resulting from torts committed by the public bodies and their agents. Undoubtedly, the legislature was aware that the imposition of limits would prevent some claimants from being compensated fully for their injuries arising from such torts. Nevertheless, the legislature chose to limit the "liability" of public bodies in order to impose a measure of certainty and to protect the public fisc. So far as we can determine, no later legislature, in modifying the OTCA liability limits, ever has abandoned that underlying purpose of quantifying and placing known limits on the financial exposure of public bodies.

---

[11] Upon enactment of the OTCA, ORS 30.270(1) provided:

"Liability of any public body on any claim within the scope of this Act shall not exceed:

"(a) $25,000 when the claim is one for damage to or destruction of property and $50,000 to any claimant in any other case.

"(b) $300,000 for any number of claims arising out of a single occurrence."

Or Laws 1967, ch 627, § 4.

Furthermore, there is nothing in the legislative history to suggest that the legislature intended to depart from that purpose when it authorized the award of attorney fees and costs in an action brought under ORS 659.121(2). Likewise, there is nothing in the legislative history to suggest that the legislature intended such a departure when it authorized attorney fee and costs awards in discrimination actions under ORS 20.107. It is entirely consistent with the legislative history of those statutes to construe the liability limit in ORS 30.270(1)(b) (1985) as applying to awards of attorney fees and costs, as well as awards for damages, made against public bodies.

Plaintiff argues that construing the liability limit in ORS 30.270(1)(b) (1985) to apply to attorney fees and costs in employment discrimination actions "would be to negate, without justification, the legislature's plan for encouraging discrimination claimants." As the Court of Appeals noted, "One obvious purpose of ORS 659.121 is to ameliorate the financial burdens associated with litigation to vindicate a person's right not to be discriminated against unlawfully." *Griffin v. Tri-Met, supra,* 112 Or App at 584. The same may be said of ORS 20.107. We are cognizant that, in deciding in this case to honor the policy choice of the legislature in imposing liability limits in the OTCA, we detract to some degree from the policy choice that the legislature made in providing for attorney fees and costs in employment discrimination actions. But making *a* choice between the two policies cannot be avoided, because both cannot be fully vindicated at the same time. We have chosen the policy of the statutory scheme that governs the amount of liability of governments for their torts — the OTCA — over the policy of a statutory scheme that applies to one particular kind of harm that a government might cause. We believe that our choice is inherent in the OTCA. Given the political struggle that always accompanies attempts to enlarge the financial exposure of governmental bodies, as exemplified in the legislative history to which we have referred, we are unwilling to attribute to the legislature an intent — never expressed anywhere — to waive the OTCA limits on this single form of wrong out of all the kinds of wrongs that could be committed by governmental bodies. If a future legislature disagrees, it has the ability to alter that choice.[12]

---

[12] Our decision in this case applies only to the pre-1987 version of ORS

We hold that in an employment discrimination action such as the present one, the $100,000 liability limit in ORS 30.270(1)(b) (1985) applies not only to the award of damages, but also to any award of attorney fees and costs. Therefore, in this case, Tri-Met's total liability to plaintiff for damages *and* attorney fees and costs could not exceed the $100,000 limit in ORS 30.270(1)(b) (1985). It follows that the trial court erred in awarding plaintiff attorney fees and costs in excess of the $100,000 already awarded to plaintiff as damages. Similarly, the Court of Appeals erred in affirming the trial court's award of attorney fees and costs.

The foregoing logic applies with equal force to the award to plaintiff by the Court of Appeals of attorney fees, costs, and disbursements on appeal. Under ORS 30.270(1)(b) (1985), Tri-Met's total liability to plaintiff in this case cannot exceed $100,000. The trial court reached that limit when it entered judgment in favor of plaintiff for $100,000 in damages. It follows that Tri-Met could not be subjected to any further award of attorney fees, costs, or disbursements by the Court of Appeals.

The decision of the Court of Appeals is affirmed in part and reversed in part. The order of the Court of Appeals allowing attorney fees, costs, and disbursements is reversed. The order of the circuit court awarding plaintiff attorney fees and costs is reversed. The case is remanded to the circuit court for further proceedings.

**UNIS, J.,** dissenting.

What the legislature "giveth" to the prevailing party in a civil rights action based on a claim of unlawful employment discrimination, this court today "taketh away."

ORS 659.121(2) of the Oregon civil rights law provides, *inter alia*, that in any civil action in which a person claims to be aggrieved by a violation of ORS 659.425(1) (discrimination against a disabled person in employment) "the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal." ORS 20.107(1) provides:

---

30.270(1). We express no opinion regarding the effect of the 1987 amendments. See *supra*, 318 Or at 504, for the text of those amendments.

"In any civil judicial proceeding * * * a complaining party who prevails in a final binding judgment on a claim of illegal discrimination in violation of state constitutional provision, statute or administrative rule shall be entitled to recover costs and disbursements, including attorney and expert witness fees reasonably and necessarily incurred in connection with the discrimination claim, at the trial court * * * and on appeal."

ORS 20.130 further provides that in all actions in which the state or a public corporation is a party, "the state or public corporation is *liable for* and may recover costs and disbursements in like manner and with like effect as in the case of natural persons." (Emphasis added.)

Despite those three explicit statutory provisions, today the majority denies the prevailing party in this civil rights action, based on a claim of unlawful employment discrimination by a public body, costs and reasonable attorney fees awarded at trial and on appeal.

Plaintiff brought this civil action for damages under ORS 659.121(2)[1] against Tri-County Metropolitan Transportation District of Oregon (Tri-Met). In his Fourth Amended Complaint, on which this case was tried and on which plaintiff prevailed, plaintiff asserted a single claim of employment discrimination under ORS 659.425(1),[2] *i.e.*, that Tri-Met had

---

[1] ORS 659.121(2) provides:

"Any person claiming to be aggrieved by alleged violations of ORS 659.033(1) or (3), 659.295 or 659.400, 659.405, 659.410(1), 659.415 to 659.435 and 659.550 may file a civil action in circuit court to recover compensatory damages or $200, whichever is greater, and punitive damages. In addition, the court may award relief authorized under subsection (1) of this section and such equitable relief as it considers appropriate. At the request of any party, the trial of such case shall be by jury. In any action brought under this subsection, the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal. Any attorney fee agreement shall be subject to approval by the court."

[2] ORS 659.425(1) provides:

"For the purpose of ORS 659.400 to 659.460, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"(b) An individual has a record of a physical or mental impairment; or

"(c) An individual is regarded as having a physical or mental impairment."

discriminated against him because of "his physical handicap of HIV infection." Relying on the requirements of ORS 18.570, Or Laws 1987, ch 774, § 7a, the trial court instructed the jury that damages, if awarded, would be on the basis of economic and noneconomic losses.[3] The verdict form identified damages in that fashion.[4] The jury returned a verdict awarding plaintiff $255,000 in economic damages and $245,000 in noneconomic damages, for a total of $500,000 in compensatory damages. The trial court ruled that the $100,000 liability limitation in the pre-1989 version of ORS 30.270(1)(b),[5] not the 1989 version of ORS 30.270(1)(b)[6] of the Oregon Tort Claims Act (OTCA), applied to plaintiff's recovery. The trial court reduced plaintiff's judgment from $500,000 to $100,000. The trial court further held that the

---

[3] ORS 18.570 provides in part:

"A verdict shall set forth separately economic and noneconomic damages, if any, as defined in ORS 18.560."

[4] ORS 18.560(2) provides in part:

"(a) 'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less.

"(b) 'Noneconomic damages' means subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment."

[5] The pre-1989 version of ORS 30.270 is set out *infra* in the text of this opinion.

[6] The 1989 version of ORS 30.270 provides in part:

"(1) Liability of any public body or its officers, employees or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 shall not exceed:

"(a) $50,000 to any claimant for any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence.

"(b) $100,000 to any claimant as general and special damages for all other claims arising out of a single accident or occurrence unless those damages exceed $100,000, in which case the claimant may recover additional special damages, but in no event shall the total award of special damages exceed $100,000.

"(c) $500,000 for any number of claims arising out of a single accident or occurrence."

$100,000 monetary liability limitation in the pre-1989 version of ORS 30.270(1)(b) did not apply to costs and reasonable attorney fees. Accordingly, the trial court awarded plaintiff $7,461.40 in costs and $279,035.30 in attorney fees.

Tri-Met appealed to the Court of Appeals, assigning as error, *inter alia*, the trial court's award of costs and attorney fees to plaintiff in excess of the $100,000 monetary liability limitation in the pre-1989 version of ORS 30.270(1)(b). The Court of Appeals affirmed the trial court's judgment, holding, *inter alia*, that "awards of attorney fees and costs were not intended to be included within the liability limit in OTCA." *Griffin v. Tri-Met*, 112 Or App 575, 584, 831 P2d 42 (1992).

Tri-Met petitioned this court for review. While that petition was pending before this court, the Court of Appeals entered an order awarding plaintiff $55,496.75 in costs and disbursements and attorney fees on appeal. Tri-Met filed a second petition for review, assigning as error the Court of Appeals' award of costs and attorney fees on appeal. This court allowed both petitions for review. The majority now reverses the order of the Court of Appeals and the judgment of the trial court, which allowed plaintiff costs and disbursements and attorney fees. The majority holds:

> "[I]n this case, Tri-Met's total liability to plaintiff for damages and attorney fees and costs could not exceed the $100,000 limit in [the pre-1989 version of ORS 30.270(1)(b)]. It follows that the trial court erred in awarding plaintiff attorney fees and costs in excess of the $100,000 already awarded to plaintiff as damages. Similarly, the Court of Appeals erred in affirming the trial court's award of attorney fees and costs.

> "The foregoing logic applies with equal force to the award to plaintiff by the Court of Appeals of attorney fees, costs, and disbursements on appeal. Under [the-pre 1989 version of ORS 30.270(1)(b)], Tri-Met's total liability to plaintiff in this case cannot exceed $100,000. The trial court reached that limit when it entered judgment in favor of plaintiff for $100,000 in damages. It follows that Tri-Met could not be subjected to any further award of attorney fees, costs, or disbursements by the Court of Appeals." 318 Or at 515.

Because I find the majority's analysis and its holding objectionable on several grounds, I cannot join the majority's opinion.

I conclude that awards of costs and reasonable attorney fees to the prevailing party in a civil rights action, in which a person claims to be aggrieved by a violation of ORS 659.425(1), were *not* intended to be included within the monetary liability limitation of the OTCA.

To support its result, the majority's reasoning might be expressed in five holdings. First, an unlawful employment practice by Tri-Met, specifically handicap discrimination in violation of ORS 659.425(1), is a "tort" subject to the provisions of the OTCA. Second, the $100,000 liability limitation in the pre-1989 version of ORS 30.270(1)(b), and not the monetary liability limitation in the 1989 version of ORS 30.270(1)(b), applies to plaintiff's civil rights action against Tri-Met. Third, the $100,000 liability limitation in the pre-1989 version of ORS 30.270 refers to the total amount of money that Tri-Met must pay to plaintiff, who prevailed in this action. Fourth, the $100,000 liability limitation applies not only to an award of damages against a public body, but also to an award of costs and reasonable attorney fees. Finally, the trial court and the Court of Appeals erred in awarding costs and reasonable attorney fees to plaintiff because a money judgment in the amount of $100,000 for damages already had been entered for plaintiff against Tri-Met. I explain my disagreement with each of those holdings in turn.

My first disagreement concerns the majority's holding that plaintiff's civil rights action for damages for unlawful employment discrimination in violation of ORS 659.425(1) is a "tort" within the meaning of the OTCA. This case was tried in the trial court and argued in the Court of Appeals on the assumption by the parties that the OTCA applied to plaintiff's unlawful discrimination action. Neither plaintiff nor Tri-Met raised, briefed, or addressed this issue in the trial court, in the Court of Appeals, or in this court. The argument that plaintiff's civil rights action was not subject to the OTCA was raised on review by *amicus curiae* Oregon Trial Lawyers Association in this court. Until the issue is properly before this court, fully briefed and argued, we should not address it

or express any opinion concerning it. Moreover, even if an unlawful employment practice in violation of ORS 659.425(1) is a "tort," as the majority holds, it does not necessarily follow that such an unlawful employment practice is a tort within the scope of the OTCA.[7]

My next disagreement concerns the majority's analysis in reaching its conclusion that the monetary liability limitation in the pre-1989 version of ORS 30.270 applies to plaintiff's claim. The majority reasons:

"As noted, the 1987 amendments to ORS 30.275 apply 'only to claims that *accrue* on or after January 1, 1989.' (Emphasis supplied.) Here, plaintiff has asserted a *single claim* of employment discrimination. The question, therefore, is whether that claim 'accrued' on or after January 1, 1989. 'When used with reference to a cause of action [the word "accrue"] means when an action may be maintained thereon. [The claim] accrues whenever one person may sue another.' *Berry v. Branner*, 245 Or 307, 312, 421 P2d 996 (1966) (emphasis deleted).

"Plaintiff's fourth amended complaint alleges instances of discrimination by Tri-Met beginning in October 1987 and continuing through his allegedly unlawful termination in December 1989. Plaintiff contends that his claim did not accrue until his termination in December 1989. According to the complaint, however, plaintiff filed a parallel discrimination claim with the Bureau of Labor and Industries in 1988. Moreover, plaintiff filed his first complaint in the present

---

[7] It is by no means clear that the legislature, in enacting the Oregon civil rights law, which permits a civil action against a public body for unlawful employment practices, intended all such civil actions to be subject to the OTCA. Indeed, ORS 659.160(1) of the Oregon civil rights law provides in part:

"Any person claiming to be aggrieved by unlawful discrimination in higher education as prohibited by ORS 659.150 may file a civil action in circuit court for equitable relief or, *subject to the terms and conditions of ORS 30.265 to 30.300 [the OTCA]*, damages, or both." (Emphasis added.)

What is the significance, if any, of the legislature's failure to similarly refer to the OTCA in ORS 659.121(2), which, as previously stated, provides a civil rights action to a person — such as plaintiff in this case — who claims to be aggrieved by an alleged violation of ORS 659.425(1)? Does the failure of the legislature to expressly make an action brought under ORS 659.160(1) of the Oregon civil rights law *subject* to the OTCA create an inference that the legislature intended an action brought under another provision of the Oregon civil rights law, *e.g.*, ORS 659.121(2), not be subject to the OTCA? "Ordinarily, when the legislature includes an express provision in one statute, but omits such a provision in another statute, it may be inferred that such omission was deliberate." *Oregon Business Planning Council v. LCDC*, 290 Or 741, 749, 626 P2d 350 (1981).

action in February 1989. *We need not decide which of the discriminatory events alleged by plaintiff caused his claim to accrue. It is sufficient here to hold that the claim had accrued at least by the time plaintiff filed his complaint with the Bureau of Labor and Industries; plaintiff's termination in December 1989 was not essential to the accrual of his claim. It follows that the pre-1989 version of ORS 30.270 applies to this case.*" 318 Or at 505-06 (emphasis added) (bracketed material in original).

I find the highlighted portions of the majority's reasoning confusing and circular.

I agree with the majority that plaintiff has asserted a single claim of handicap discrimination under ORS 659.425(1). That one claim of relief seeks damages based on alleged instances of discrimination by Tri-Met.[8] That is how the case was tried and submitted to the jury, and that is what plaintiff proved. According to the allegations in paragraph 4 of plaintiff's Fourth Amended Complaint, the instances of discrimination began in October 1987. The discriminatory acts did not end until "on or about December 2, 1989," the date that plaintiff was unlawfully terminated "from further employment at Tri-Met, despite the fact that he could have

---

[8] After the trial court's rulings on plaintiff's and Tri-Met's motions at the close of the evidence, Paragraph 4 of Plaintiff's Fourth Amended Complaint read:

"During and after October 1987, Tri-Met, through its General Manager, James Cowen, and its supervisors, took actions including:

"a. Continuously scrutinizing plaintiff's work more closely than that of other dispatchers to increase his level of stress and accelerate his illness;

"b. [The trial court struck paragraph b];

"c. Continuously retaining and referring to old discipline records in violation of a grievance settlement;

"d. On November 30, 1988, attempting to discipline plaintiff again for noting the anniversary of the assassination of John F. Kennedy on a message on his computer terminal;

"e. In November 1988, attempting to cut off plaintiff, who was known to be ill, from necessary health care, by canceling plaintiff's health insurance benefits and failing to reinstate them as required by the arbitrator, leaving plaintiff without insurance coverage for his health care and medications[;]

"f. *On or about December 2, 1989, terminating plaintiff from further employment* at Tri-Met, despite the fact that he could have performed the work of dispatcher with reasonable accommodation;

"g. Other actions in which plaintiff was treated differently than his fellow employees after January 6, 1988." (Emphasis added.)

performed the work of dispatcher with reasonable accommodation.''[9] Without any statutory construction as to the meaning of the word "accrue" intended by the legislature in Oregon Laws 1987, chapter 915, section 14, and with scant analysis and discussion, the majority simply concludes that plaintiff's claim accrued when plaintiff filed his initial complaint with the Bureau of Labor and Industries. That initial complaint was filed in June 1988, about one and one-half years before defendant terminated plaintiff unlawfully in December 1989. The majority does not discuss what significance, if any, the alleged discriminatory act (plaintiff's termination), which occurred after the 1989 version of ORS 30.270(1)(b) was in effect, has in deciding whether the pre-1989 version of ORS 30.270(1)(b) or the 1989 version of ORS 30.270(1)(b) is applicable to plaintiff's single claim of handicap discrimination.

If the 1989 version of ORS 30.270(1)(b) were held to apply to plaintiff's claim, then the majority suggests that it would reach a different result in this case. The majority recognizes that in enacting the 1989 version of ORS 30.270(1)(b), the legislature expressly intended the limit on "liability" to the amount of recoverable damages, and not to costs and disbursements and reasonable attorney fees.[10] The majority states:

> "[T]he present [1989] version of ORS 30.270(1)(b) expressly provides that '[l]iability of any public body * * * on claims within the scope of [the OTCA] shall not exceed * * * $100,000 to any claimant *as general and special damages*." 318 Or at 509 & n 7 (emphasis and omissions in original).

My next disagreement concerns what the majority identifies as the "central issue in the case," *i.e.*, whether the monetary liability limitation in the pre-1989 version of ORS 30.270(1)(b) includes not only damages, but also costs and

---

[9] To satisfy the requirements of ORS 30.275, on December 7, 1989, plaintiff gave the required notice of his claim stated in paragraph 4(f) of the fourth amended complaint.

[10] It should be noted that neither ORS 659.121(2) nor the 1989 version of ORS 30.270(1)(b) places a limit on the amount of costs and disbursements and reasonable attorney fees that may be awarded to the prevailing party in a civil rights action based on a claim of unlawful employment discrimination in violation of ORS 659.425(1).

reasonable attorney fees. 318 Or at 507.[11] After purporting to use the methodology for interpreting a statute to discern the intent of the legislature that this court articulated in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), the majority concludes that the legislature intended the pre-1989 version of ORS 30.275(1)(b) to limit "the *amount of money* [not recoverable damages, as plaintiff argues] that a public body must pay to a claimant as the result of any 'single accident or occurrence' that constitutes a 'tort' within the meaning of the OTCA." 318 Or at 508 (emphasis added). Consequently, the majority concludes that the legislature intended the $100,000 limit on liability in the pre-1989 version of ORS 30.270(1)(b) of the OTCA to include an award of costs and reasonable attorney fees. Because the methodology and reasoning used by the majority to determine the legislative intent on this issue is flawed, the majority reaches the wrong conclusion.

The OTCA, ORS 30.260 to 30.300, permits tort actions against public bodies. ORS 30.260(8) defines a "tort" for the purposes of the OTCA as "the breach of a legal duty * * * which results in injury * * * [and] for which the law provides civil right of action for damages or for a protective remedy." ORS 30.265 contains a general waiver of sovereign immunity from tort liability with certain restrictions[12] and makes a public body "subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties." ORS 30.270 sets monetary liability limitations on that waiver.

Assuming, *arguendo*, that the monetary liability limitations in the pre-1989 version of ORS 30.270(1)(b) apply to

---

[11] Of course, if the 1989 version of ORS 30.270(1)(b) applies to plaintiff's claim, even the majority might well conclude that the monetary liability limitation in that statutory provision does not include awards of costs and reasonable attorney fees.

[12] The Oregon Constitution is framed on the premise that the state is immune from suit and that if immunity is waived it shall be done by the action of the legislature. *Vendrell v. School District No. 26C et al*, 226 Or 263, 278, 360 P2d 282 (1961). Article IV, section 24, of the Oregon Constitution provides in part:

"Provision may be made by general law, for bringing suit against the State, as to all liabilities originating after, or existing at the time of the adoption of this Constitution * * *."

The state partially waived its sovereign immunity by general law when it enacted the OCTA. *Hale v. Port of Portland*, 308 Or 508, 517, 783 P2d 506 (1989).

plaintiff's civil rights action seeking the special statutory remedy provided in ORS 659.121(2), the question then is to what do those limitations apply.

In interpreting a statute, the court's task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 610. To do that, this court begins by scrutinizing both the text and the context of the statute. *Id.* at 610-11. In this first level of analysis, the court considers the context of the statutory provision at issue, which includes other provisions of the same statute and related statutes. *Id.* at 611. Also included are rules of construction that bear directly on the interpretation of the statutory provision in context, such as the canon that we read statutes *"in pari materia"* — "on the same subject." Statutory provisions on the same subject are construed together. ORS 174.010; *State of Oregon v. Buck,* 200 Or 87, 93, 262 P2d 495 (1953).[13]

By focusing only on the text of the pre-1989 version of ORS 30.270(1)(b), and without considering the other subsections of the pre-1989 version of ORS 30.270, the majority states that the pre-1989 version of ORS 30.270(1)(b)

> "provides that '[l]iability * * * shall not exceed * * * $100,000.' The statute does not refer to 'damages' at all. Had the legislature intended the limit on 'liability' to apply only to liability for tort damages, it could have said so." 318 Or at 508-09.

The majority then concludes that the legislature intended the monetary liability limitations in the pre-1989 version of ORS 30.275(1)(b) to refer to the "amount of money that a public body must pay to a claimant as the result of any 'single accident or occurrence.' " 318 Or at 508.

Examination and consideration of the text of the pre-1989 version of ORS 30.270(1)(b) with the other subsections of the pre-1989 version of ORS 30.270, however, indicate a legislative intent to limit "liability" to the *amount of*

---

[13] Another canon is that "although statutes are not strictly in pari materia, yet, if they relate to the same matter, persons or things, or the same class of persons or things, or are closely allied to the same subject or object, they may be construed together." *State of Oregon v. Buck,* 200 Or 87, 93-94, 262 P2d 495 (1953).

*recoverable damages*. The pre-1989 version of ORS 30.270 provided:

"(1) *Liability of any public body* or its officers, employes or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 *shall not exceed*:

"(a) *$50,000* to any claimant for any number of claims for damage to or destruction of property, *including consequential damages*, arising out of a single accident or occurrence.

"(b) *$100,000* to any claimant for all other claims arising out of a single accident or occurrence.

"(c) *$300,000* for any number or claims arising out of a single accident or occurrence.

"(2) *No award of damages* on any such claim *shall include punitive damages. The limitation* imposed by this section on individual claimants *includes damages* claimed for loss of services or loss of support arising out of the same tort.

"(3) Where the amount awarded to or settled upon multiple claimants exceeds $300,000, any part may apply to any circuit court to apportion to each claimant a proper share of the total amount limited by subsection (1) of this section. The share apportioned each claimant shall be in the proportion that the ratio of the award or settlement made to the claimant bears to the aggregate awards and settlements for all claims arising out of the occurrence.

"(4) Liability of any public body and one or more of its officers, employes or agents, or two or more officers, employes or agents of a public body, on claims arising out of a single accident or occurrence, shall not exceed in the aggregate the amounts limited by subsection (1) of this section.

"(5) For any claim arising in connection with a nuclear incident, *no provision of this section shall limit the amount of damages recoverable for* injuries or death or loss of or damage to property, or loss of use of property as a result of a nuclear incident covered by an insurance or indemnity agreement under 42 U.S.C. 2210." (Emphasis added.)

Subsection (1) of the pre-1989 version of ORS 30.270 reads much like a liability limitations clause in an insurance policy. The monetary liability limitations are:

(a) "Damage to or destruction of property" - per claimant/per single accident or occurrence: $50,000. No matter how many items of property of one claimant are damaged in a single accident or occurrence, the most a successful claimant can recover is $50,000. Consequential damages are included in the limit if there is property damage or destruction.

(b) "[A]ll other claims" - per claimant/per single accident or occurrence: $100,000. Again, no matter how many claims other than for property damage or destruction of property and damages consequent thereto the plaintiff may suffer as a result of a single accident or occurrence, recovery is limited to $100,000.

(c) "[A]ny number of claims" - per single accident or occurrence only: $300,000.

Subsection (2) expressly states that *"[n]o award of damages* on any such claim *shall include punitive damages.* The *limitation* imposed by this section on individual claimants *includes damages* claimed for loss of services or loss of support arising out of the same tort." (Emphasis added.)

Subsection (4) prohibits multiplying the monetary liability limitations by the number of individual defendants for whom the public body is liable.

Subsection (5) provides that *"no provision of this section [the pre-1989 version of ORS 30.270] shall limit the amount of damages recoverable"* for certain losses resulting from certain nuclear incidents. (Emphasis added.)

The language in subsection (5), which states that "no provision of this section shall limit the amount of damages recoverable" for certain losses as a result of certain nuclear incidents, supports the conclusion that the legislature intended the $50,000, $100,000, and $300,000 *liability limitations* to refer to the *amount of recoverable damages.*

In at least three prior cases, this court has considered issues involving the pre-1989 version of ORS 30.270. In each case, this court has specifically referred to the monetary liability limitations contained in the statute as "damages limitation." In *Hale v. Port of Portland*, 308 Or 508, 783 P2d 506 (1989), the issue before this court was whether the

monetary liability limitations of the pre-1989 version of ORS 30.270(1)(b) were constitutional as applied to cities and port districts. On at least nine occasions in the majority opinion in *Hale*, this court characterized the monetary liability limitations in that statute as "damage limitations." *Id.* at 511, 512, 524 n 10, and 526.

In *Rogers v. Saylor*, 306 Or 267, 760 P2d 232 (1988), this court was asked to decide whether the limitations on individual and governmental liability contained in the OTCA, most specifically the pre-1989 version of ORS 30.270, applied to an action that stated a claim under the federal civil rights act, 42 USC § 1983, when that federal claim was brought in state court. In holding that they did not, this court referred to the monetary liability limitations on individual and governmental liability in the pre-1989 version of ORS 30.270 as *"damages limitations."* 306 Or at 272 (emphasis added). *See also Nutbrown v. Munn*, 311 Or 328, 339, 811 P2d 131 (1991) (referring to "the damage limitations provisions of the Oregon Tort Claims Act").[14]

In my view, because the text and context of the pre-1989 version of ORS 30.270 show a clear legislative intent, *i.e.*, that the monetary liability limitations refer to the amount of recoverable damages, resort to legislative history is unnecessary. *PGE v. Bureau of Labor and Industries, supra*, 317 Or at 611. Even if inquiry into legislative history were necessary to determine the monetary liability limitations in the pre-1989 version of ORS 30 270, the paucity of legislative history noted by the majority does not support the majority's conclusion. The majority apparently concedes that, because in the final analysis the majority rests its decision on OTCA's policy governing the amount of liability of government for its torts. 318 Or at 514.

Having concluded that the monetary liability limitations in the pre-1989 version of ORS 30.270 refer to the amount of recoverable damages, I turn next to the question whether "recoverable damages" include costs and disbursements and reasonable attorney fees. The short and unequivocal answer is

---

[14] The author of the majority opinion in the present case was the author of the majority opinion in *Hale v. Port of Portland*, 308 Or 508, 783 P2d 506 (1989), and the court's opinion in *Nutbrown v. Munn*, 311 Or 328, 811 P2d 131 (1991).

that they do not. ORS 20.107 provides that "a complaining party who prevails in a final judgment on a claim of illegal discrimination" has the right to recover *"costs and disbursements, including attorney * * * fees* reasonably and necessarily incurred in connection with the discrimination claim." (Emphasis added.) "Costs and disbursements" are defined as "reasonable and necessary expenses incurred in the prosecution or defense of an action." ORCP 68 A(2). "Attorney fees" are "the reasonable value of legal services related to the prosecution or defense of an action." ORCP 68 A(1). ORCP 68 C(4)(a) provides in part:

> "A party seeking attorney fees or costs and disbursements shall, not later than 14 days *after entry of judgment* pursuant to Rule 67:
>
> "C(4)(a)(i) File with the court a signed and detailed statement of the amount of attorney fees or costs and disbursements * * *." (Emphasis added.)

Costs and disbursements and attorney fees are "add-ons," rather than part of the claim for relief. Damages, on the other hand, are the sum of money that may be awarded as a consequence of the injury or loss suffered by the party seeking redress.[15]

The conclusion reached by the majority frustrates the important policy objectives of the Oregon civil rights law and related statutes. ORS chapter 659 embodies a separate statutory scheme — the Oregon civil rights law — which applies to public bodies as well as to private entities. ORS 659.010(6). The parties agree that Tri-Met is an "employer"

---

[15] The OTCA was based on Minnesota's tort claims act. *Beaver v. Pelett*, 299 Or 664, 672, 705 P2d 1149 (1985). *See also* Lansing, *The King Can Do Wrong! The Oregon Tort Claims Act*, 47 Or L Rev 357, 359 (1968) (discussing history of OTCA). When an Oregon statute is modeled on a statute from another jurisdiction, this court views cases from that jurisdiction interpreting the law as persuasive in interpreting the Oregon statute. *Redmond Ready-Mix, Inc. v. Coats*, 283 Or 101, 110, 582 P2d 1340 (1978).

The Minnesota Supreme Court, in interpreting the monetary liability limitations of the Minnesota Tort Claims Act, has held that costs and disbursements are not covered by the monetary liability limitations cap because "costs and disbursements are not part of the claim for compensation for personal injury; they are reimbursement of the expense of litigating the claim." *Lienhard v. State*, 431 NW2d 861, 864 (Minn 1988). Despite being unable to discern legislative intent from the text, context, or legislative history of the pre-1989 version of ORS 30.270, the majority in this case does not even acknowledge the decisional law of Minnesota interpreting the provisions on which the OTCA was modeled.

subject to the provisions of ORS chapter 659. Under the civil rights law, discrimination against a disabled person in employment is an unlawful employment practice under ORS 659.425(1). Any person claiming to be aggrieved by a violation of ORS 659.425(1) "may file a civil action in circuit court to recover compensatory damages or $200, whichever is greater, and punitive damages."[16] ORS 659.121(2).

In a civil action based on a claim of unlawful employment discrimination, "the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal." *Id.* ORS 20.107 also concerns civil actions based on claims of illegal discrimination in violation of state statute. Subsection (1) of that statute gives "a complaining party who prevails in a final binding judgment on a claim of illegal discrimination in violation of * * * statute" a right to recover *"costs and disbursements, including attorney and expert witness fees reasonably and necessarily incurred in connection with the discrimination claim, at the trial court * * * and on appeal."*[17] (Emphasis added.)

ORS 20.130 provides in part:

> "In all actions * * * defended in the name and for the use of the state, or any county or other public corporation therein, the state or public corporation is *liable* for * * * costs and disbursements in like manner and with like effect as in the case of natural persons." (Emphasis added.)

In a civil rights action against a public body, based on a claim of unlawful discrimination in violation of ORS 659.425(1) of the Oregon civil rights law, three statutes, ORS 659.121(2), ORS 20.107, and ORS 20.130, serve as an express waiver of sovereign immunity as to "costs and disbursements and reasonable attorney fees."

The legislature's objective in enacting the Oregon civil rights law is expressly declared to be the removal of discriminatory barriers as against *any* inhabitant of this state. ORS 659.020; ORS 659.022. To accomplish that objective, the legislature expressly recognized the need to provide "[a]n *adequate remedy* for persons aggrieved by certain acts

---

[16] The OTCA forbids the recovery of punitive damages. *See* ORS 30.270(2).

[17] ORS 20.107(4) provides that such an award against a "state agency" shall be paid "directly from funds available to [the agency]."

of discrimination." ORS 659.022(2). (Emphasis added.) As the majority in this case recognizes, one obvious purpose of ORS 659.121 and ORS 20.107 " 'is to ameliorate the financial burdens associated with litigation to vindicate' " the right of any inhabitant of this state not to be discriminated against unlawfully. 318 Or at 514 (quoting *Griffin v. Tri-Met, supra,* 112 Or App at 584).

Often, in the civil rights context, impecunious plaintiffs can ill afford to litigate their legitimate claims against defendants with more resources. The legislature sought to redress this balance in part and to provide incentives for bringing meritorious lawsuits. If successful plaintiffs are required to pay their own costs and attorney fees, few aggrieved parties would be in a position to advance the public interest in ensuring compliance with the Oregon civil rights law. If a plaintiff obtains a judgment, he or she does so, not only for himself or herself alone, but also as a "private attorney general" vindicating a policy that the legislature considered to be of a high priority.

On the other hand, the legislature sought to discourage nonmeritorious civil actions by allowing the court to award "the prevailing party [the civil rights plaintiff or defendant] costs and reasonable attorney fees at trial and on appeal." ORS 659.121(2). Thus, successful plaintiffs are treated no differently than successful defendants as to the entitlement of costs and disbursements and reasonable attorney fees. The legislature sought to relieve the prevailing civil rights plaintiff or defendant from the expenses — "costs and disbursements and reasonable attorney fees" — of prosecuting or defending a discrimination claim.

The majority in this case states that it is "unwilling to attribute to the legislature an intent — never expressed anywhere — to waive the OTCA limits on this single form of wrong out of all the kinds of wrongs that could be committed by governmental bodies," 318 Or at 514. Curiously, the majority states: "'If a future legislature disagrees" with the majority's policy choice in this case, "it has the ability to alter that choice." *Id.* In making those statements, the majority disregards what it recognizes elsewhere, that the legislature, in enacting the 1989 (present) version of ORS 30.270,

intended to limit the monetary liability limitations in ORS 30.270 to general and special damages.

In sum, I would hold that the monetary liability limitations in the pre-1989 version of ORS 30.270 refer to "recoverable damages," that costs and disbursements and reasonable attorney fees are *not* subject to the monetary liability limitations in the OTCA, and that the legislature has waived sovereign immunity as to costs and disbursements and reasonable attorney fees in a civil rights action based on a claim of illegal discrimination.

For the foregoing reasons, I respectfully dissent.

Van Hoomissen, J., joins in this dissenting opinion.