Argued and submitted March 12, affirmed July 5, 2001

STATE OF OREGON,
*Respondent,*

*v.*

ROMAN AVALOS-IZQUIERDO,
*Appellant.*

C982638CR; A106565

27 P3d 528

David J. Celuch argued the cause for appellant. With him on the brief was Celuch, Ludwig & Forman LLP.

Daniel J. Casey, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

Defendant appeals from a judgment of conviction on the charges of kidnapping, ORS 163.235, unlawful use of a weapon, ORS 166.220, attempted rape, ORS 163.375, and sexual abuse, ORS 163.427. We address only defendant's first assignment of error, in which he challenges the trial court's denial of his motion to suppress his statements to police on the ground that they were a product of an unlawful entry into the farm labor camp where police found and arrested defendant. We affirm.

We recite the facts as they were developed at the suppression hearing. On July 4, 1998, the 17-year-old victim attended the Washington County Fair with friends. After leaving the fair, she and her friends went to the Lloyd Dean labor camp in Cornelius (Lloyd Dean camp) where defendant and other people were celebrating. Toward the end of the evening, defendant grabbed the victim by her hair and pulled her from the car in which she was preparing to leave. He later forced her into a car driven by one of his friends and took her to the Vasquez Farm labor camp (Vasquez camp). At the Vasquez camp, defendant took the victim to cabin number 10, where he threw her onto a bed and began groping her. The victim tried to resist, and defendant responded by holding a pocketknife to her neck and threatening to kill her. She later told investigating officers that, at that point, she tried to act "nice" to defendant and told him that she had to use the bathroom. Defendant allowed her to leave, stating, "Go ahead, but I'm going to be watching you." When defendant did not follow her, she ran to the camp foreman's cabin, where she told the foreman and his wife of the evening's events. Shortly after the victim returned home in the early morning, she went to the Hillsboro Police Department and reported the crimes.

The Washington County Sheriff's Office conducted an investigation and attempted, among other things, to determine where defendant resided. In the days immediately following the kidnapping and assault, an officer went to the scene of the incident and questioned the Vasquez camp foreman and his wife regarding defendant. They told the officer that they did not know defendant by either his name or his

gang moniker, "Tecolote," and that defendant did not live in the cabin where the attack occurred. In the course of the investigation, however, the police discovered graffiti in that cabin bearing defendant's gang moniker.

As the police investigation progressed, Pat Rodriguez, who lived at the Lloyd Dean camp, where her husband was a foreman, contacted the Washington County Sheriff's Office regarding the July 4 incident. She told the police that the car used in the kidnapping had shown up at the Lloyd Dean camp one or two days after the incident. Police asked Rodriguez, who knew the people who lived at the camp, if she knew anyone by defendant's name. She told them that she did not.

Based on the information available to them, which included the record of an address for defendant in Cornelius, the police concluded that defendant did not live at the Lloyd Dean camp. On the afternoon of July 10, 1998, an officer went to the Lloyd Dean camp to look for the car that Rodriguez had reported. The officer had no expectation that he would find defendant there. When the officer arrived, the officer observed that a fence surrounded the camp and that the vehicle gate was locked. There was a small open pedestrian gate located roughly 20 feet to the right of the vehicle gate. Although a "no trespassing" sign was posted on the fence, the officer testified that he did not see it. Upon entering the camp through the pedestrian gate, the officer, who had encountered defendant previously on an unrelated matter, saw a man walking toward the camp's showers and coming into his line of sight. When the man neared him, the officer recognized him to be defendant. After a brief colloquy, the officer arrested defendant.

Before trial, defendant moved to suppress his statements to police after the warrantless police entry into the Lloyd Dean camp. He claimed that he was a resident of the camp and that the police entry was a trespass that violated his right to be free from governmental intrusion, secured by Article I, section 9, of the Oregon Constitution.[1] Further, he

---

[1] Article I, section 9, of the Oregon Constitution, provides, in relevant part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

claimed that the statements he made to the police after his arrest were the product of the police exploitation of that illegal entry and, consequently, that they should be excluded.

The trial court denied defendant's motion, specifically finding that defendant was not a resident of the Lloyd Dean camp and concluding that, as such, defendant did not have a privacy interest in the camp protected by Article I, section 9. The trial court also made two alternative rulings on which it denied defendant's motion to suppress. First, the trial court concluded that, even if defendant had a privacy interest in the camp, the warrantless police entry was not a trespass because the camp appeared to be open to the public, as demonstrated by the open pedestrian gate. Second, the court concluded that, even assuming that defendant had a privacy interest in the camp, and further assuming that the police entry was a trespass, no causal relationship existed between the purported illegality and the evidence ultimately obtained. Consequently, the court declined to suppress the statements on the ground that they were obtained through the exploitation of police illegality. Following a jury trial, defendant was convicted on all charges. On appeal, defendant assigns error to the trial court's denial of his motion to suppress, challenging each of the trial court's alternative bases for denying his motion.

We first consider whether defendant had an Article I, section 9, privacy interest in the common area of the camp. Defendant's arguments are predicated on his assertion that he was a resident of the Lloyd Dean camp at the time that the police entered the camp and arrested him.[2] *See State v.*

---

[2] We confine our analysis, as did the trial court, to defendant's argument: *viz.*, whether defendant was a resident of the camp and therefore had a privacy interest in it. At trial, and in his brief on appeal, defendant has argued only that he had a privacy interest in the common area of the camp because he was a resident there. In response to a question at oral argument on appeal, however, defense counsel posited for the first time that defendant might have a privacy interest in the camp as, essentially, a guest. We do not consider that argument because it is not preserved. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 27 (2000) (preservation requires "that a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error"); *State v. Stevens*, 328 Or 116, 122, 970 P2d 215 (1998) (preservation of issue requires more than "a cursory search for some common thread, however remote, between an issue on appeal and a position that was advanced at trial").

*Tanner*, 304 Or 312, 321, 745 P2d 757 (1987). Whether defendant was a resident of the camp is a factual determination to be made by the trial court, and we are bound by the trial court's findings on the point if they are supported by constitutionally sufficient evidence in the record. *See State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If findings are not made on all issues, and there is evidence from which the facts could be decided in more than one way, we will presume that the facts were decided in a manner consistent with the trial court's denial of the motion to suppress. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

The record developed at the suppression hearing amply supports the trial court's finding that defendant was not a resident of the Lloyd Dean camp. The state offered direct evidence that Rodriguez, the wife of the Lloyd Dean camp foreman, knew the people who lived at the Lloyd Dean camp, but she did not know defendant. The state also presented indirect evidence that supported the inference that defendant lived at the Vasquez camp. Specifically, the police discovered defendant's gang moniker, by which he was widely known, written on the walls of the Vasquez camp cabin where he took the victim. The trial court was entitled to conclude on the basis of that evidence, taken as a whole, that defendant did not reside at the Lloyd Dean camp. On the basis of that finding, the trial court correctly concluded that defendant had no Article I, section 9, privacy interest in the camp and correctly denied defendant's motion on that ground. *See Tanner*, 304 Or at 321.

Because the officer did not violate defendant's Article I, section 9, rights when he entered the camp and effected defendant's arrest, there was no predicate illegality to trigger an exploitation analysis. *See State v. Rodriguez*, 317 Or 27, 38-39, 854 P2d 399 (1993). Consequently, we need not consider the alternative bases for the trial court's denial of defendant's motion to suppress.

Affirmed.