Argued and submitted July 17, affirmed December 24, 2008

# BOARDMASTER CORPORATION,
### Larry Olson,
### and Garry Olson,
### *Plaintiffs-Appellants,*

*v.*

# JACKSON COUNTY,
### R. Michael Kuntz,
### and Pacific Power,
### *Defendants-Respondents.*

## Jackson County Circuit Court
## 070876L2; A137053

198 P3d 454

Eric A. Kaufman argued the cause and filed the briefs for appellants.

Benjamin M. Bloom argued the cause for respondents Jackson County and R. Michael Kuntz. With him on the brief was Hornecker, Cowling, Hassen & Heysell, L.L.P.

Jeffrey S. Lovinger argued the cause for respondent Pacific Power. With him on the brief were Kenneth E. Kaufmann, Charles A. C. von Reis, and Lovinger Kaufmann LLP.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiffs, BoardMaster Corporation (BoardMaster) and its officers, Larry and Garry Olson, brought this action against defendants Pacific Power, Jackson County, and R. Michael Kuntz after Jackson County ordered Pacific Power to discontinue electrical service to BoardMaster's lumber mill. The trial court dismissed plaintiffs' claims against defendant Pacific Power, pursuant to ORCP 21 A(8), on the basis that applicable tariffs authorized Pacific Power to discontinue plaintiffs' electrical service. The trial court also determined that plaintiffs failed to commence their claims against defendants Jackson County and Kuntz within the time limited by statute, ORS 30.275(9), and, consequently, dismissed plaintiffs' claims against those defendants pursuant to ORCP 21 A(9). Plaintiffs challenge both rulings on appeal, and we affirm.

In reviewing the grant of a motion to dismiss, we assume the truth of all allegations in the complaint, as well as any inferences that may be drawn, and view them in the light most favorable to the nonmoving party. *Wiederhorn v. Multnomah Athletic Club*, 215 Or App 392, 394, 170 P3d 1 (2007). Our review of a motion to dismiss based on failure to state ultimate facts sufficient to constitute a claim, ORCP 21 A(8), or failure to commence an action within the time limited by statute, ORCP 21 A(9), is limited to the allegations, including exhibits incorporated by reference, of the complaint. ORCP 21 A; *Wiederhorn*, 215 Or App at 394; *Checkley v. Boyd*, 170 Or App 721, 730, 14 P3d 81 (2000), *rev den*, 332 Or 239 (2001).

Plaintiffs' complaint includes the following material allegations: In July 2002, plaintiff BoardMaster purchased property located at 747 West Fork Trail Creek Road in Jackson County, for the purpose of operating a lumber mill and general lumber sales. Larry and Garry Olson served as BoardMaster's President and Secretary, respectively.

On June 13, 2003, Kuntz, the Code Enforcement Manager for Jackson County, sent a letter on behalf of the county to Pacific Power. That letter, which was incorporated by reference in plaintiffs' complaint, identified the owner of

BoardMaster's property as "Mr. Wilbur Pride Jones" and stated the following, in relevant part:

> "With regard to [747 West Fork Trail Cr. Rd], Mr. Jones has been issued a direction to obtain the required building and electrical permits for an addition to the house at this address. Mr. Jones has, evidently, chosen not to adhere to the requirements of the Oregon Revised Statutes.

> "With reference to ORS 479.550, 479.820, and 479.830, Jackson County has no alternative but to order Pacific Corp. to disconnect the Electrical Service to 747 West Fork Trail Cr. Rd. Mr. Jones has not obtained the proper permits in order to have this property inspected for Fire and Life Safety minimum standards, therefore, it must be considered to have failed those standards at this time (ORS 479.820(a)(2)).

> "This is, by definition, a 'flagrant' violation of law, and is subject to further action by the County or State.

> "Please disconnect PP&L service to this site."

Plaintiffs allege that the representations made in that letter were false and that the statutes cited in the letter did not provide Jackson County with legal authority to order the power to be removed.

On June 24, 2003, Pacific Power delivered a letter to BoardMaster notifying it that Jackson County had ordered Pacific Power to shut off electricity to BoardMaster's property because an electrical permit had not been issued for power to run to a manufactured home on that property.

On August 2, 2003, BoardMaster hired an electrician to remove the electrical line from the lumber mill to the manufactured home. Plaintiffs allege that disconnecting the electrical line to the manufactured home cured any existing electrical hazard or code violation on BoardMaster's property.[1] BoardMaster sent proof of that removal to Jackson

---

[1] Plaintiffs do not allege that they obtained or attempted to obtain an electrical permit, despite references to lack of proper permits in both the June 13, 2003, letter and the June 24, 2003, letter. Thus, plaintiffs' allegation that the code violation was cured appears to be based solely on plaintiffs' disconnection of the electrical line from the lumber mill to the manufactured home.

County, Kuntz, and Pacific Power via facsimile and certified mail.

On August 5, 2003, Pacific Power, relying on the July 13 letter from Jackson County, disconnected electric service to BoardMaster's property and, consequently, to its lumber mill. Plaintiffs allege that Pacific Power disconnected power despite the fact that plaintiffs had already cured any violation and notified all defendants of that cure.

At times after August 5, 2003, including during the two years prior to the filing of plaintiffs' complaint on March 6, 2007, BoardMaster contacted all defendants to request restoration of electrical power to the lumber mill—but those requests were denied. Plaintiffs further allege that BoardMaster continued, on a daily basis, to be financially injured by defendants' actions.

Plaintiffs filed their complaint on March 6, 2007, alleging claims for relief for, *inter alia,* negligence, misrepresentation, intentional infliction of emotional distress, and breach of contract. Specifically, and most pertinent to this appeal, plaintiffs allege, *inter alia,* that: (1) Pacific Power was negligent in (a) "failing to recognize that the legal authority cited to them in Jackson County's letter ordering power to be removed was invalid, and in failing to properly research the matter prior to acting upon said letter" and (b) "failing to restore power to plaintiffs' lumber mill, even with knowledge that plaintiffs had cured the code violation"; (2) Kuntz was negligent in "failing to request Pacific Power to return power to the lumber mill during the past two years, even though no code violations exist"; (3) Jackson County was negligent in "failing to have its employees request Pacific Power to restore power to the lumber mill"; and, finally, (4) the Olsons "have had to endure years of pain and suffering in trying to get the power restored."

Pacific Power moved to dismiss plaintiffs' claims against it on the ground that, pursuant to ORCP 21 A(8), plaintiffs had failed to state ultimate facts sufficient to constitute a claim for relief. In particular, Pacific Power argued that the terms of an applicable tariff protect it from liability for harm resulting from service disconnection in reliance on apparent governmental authority. That tariff states, in part:

"The Company does not guarantee constant or uninterrupted delivery of electric service and shall have no liability * * * for any * * * suspension * * * in electrical service or for any loss or damage caused thereby if such * * * suspension * * * results from the following:

"(a)   Causes beyond the Company's reasonable control including, but not limited to, * * * governmental authority * * *."

Pacific Power & Light Co., *General Rules and Regulations*: *Continuity of Electric Service and Interruptions*, Rule 14 (Jan 16, 2002) (Rule 14). Consequently, according to Pacific Power, because it suspended plaintiffs' electric service in reliance on an order from Jackson County, Rule 14 protects it from liability for doing so.

Alternatively, Pacific Power argued that, pursuant to ORCP 21 A(9), plaintiffs' complaint required dismissal because plaintiffs' claims had not been commenced within the time limited by statute, as provided in ORS 12.110(1).

Defendants Jackson County and Kuntz likewise moved to dismiss plaintiffs' claims against them pursuant to ORCP 21 A(9). Those defendants argued, *inter alia*, that plaintiffs failed to commence their claims within the two-year statutory period enumerated in ORS 30.275(9).[2]

Plaintiffs opposed those motions. In response to Pacific Power's motion to dismiss under ORCP 21 A(8), plaintiffs contended that, to avoid liability based on Rule 14, the cause for disconnecting power must have been "beyond the Company's reasonable control." Consequently, plaintiffs argued, Rule 14 is not applicable because three allegations in their complaint identify causes not beyond Pacific Power's reasonable control: (1) Pacific Power failed to recognize that the legal authority cited to them in the letter from Jackson County was invalid; (2) Pacific Power failed to restore power to plaintiffs' lumber mill even after plaintiffs had cured the code violation; and (3) Pacific Power failed to follow Oregon law.

---

[2] All defendants additionally moved to strike and make more definite and certain portions of plaintiffs' complaint. Because the trial court granted defendants' motions to dismiss, it did not rule on those other motions.

Plaintiffs further remonstrated that an alternative tariff to Rule 14 is controlling in this case. That tariff states, in part:

> **"B.  Unsafe Wiring or Equipment**
>
> "Company shall have the right to refuse or discontinue electric service if any part of the Consumer's wiring or equipment, or the use thereof shall be found to be unsafe by Company or in violation of applicable laws, ordinances, rules or regulations of public authorities *until it shall have been put in a safe condition or the violation remedied.* Company does not assume the duty of inspecting or repairing the Consumer's lines or appliances or apparatus or any part thereof and assumes no liability therefor."

Pacific Power & Light Co., *General Rules and Regulations*: *Discontinuance of Service for Other Causes*, Rule 11-1 (Jan 16, 2002) (Rule 11-1) (boldface in original; emphasis added). Plaintiffs argued that, because they alleged that the electrical violation on BoardMaster's property had been remedied, under Rule 11-1, Pacific Power no longer had the right to refuse service.

In response to defendants' ORCP 21 A(9) motions to dismiss, plaintiffs argued that "[p]laintiffs allege a continuing tort, which seeks damages 'for the cumulative effect of wrongful behavior, not for discrete elements of that conduct[,]' *Davis v. Bostick*, 282 Or 667, 671[, 580 P2d 544] (1978)[,]" and, thus, their complaint was not time barred by the applicable statute of limitations. Invoking *Holdner v. Columbia County*, 51 Or App 605, 627 P2d 4 (1981), plaintiffs contended that defendants' actions—refusing to restore power to BoardMaster's property—constituted "ongoing conduct" and, thus, occurred within the two years prior to filing the complaint.

The trial court agreed with defendants and dismissed plaintiffs' complaint. Specifically, the trial court granted Pacific Power's motion to dismiss under ORCP 21 A(8), reasoning that, under either Rule 11-1 or Rule 14 of the applicable tariffs, Pacific Power was authorized to turn off the power. In so ruling, the trial court explained that

> "[n]o rules or regulations cited to this Court place the burden of evaluating (1) the accuracy of the county's letter

directing power cutoff or (2) the sufficiency of plaintiffs' * * * alleged 'cure' on Pacific Power. Boardmaster's dispute, if any, is with Jackson County, not Pacific Power."

Because the trial court granted Pacific Power's motion on that ground, it did not address Pacific Power's alternative argument that plaintiffs' complaint was time barred by ORS 12.110(1).

The trial court also granted Jackson County and Kuntz's motion to dismiss claims against them based on expiration of the statute of limitations, ORCP 21 A(9), reasoning that plaintiffs' claims were time barred by ORS 30.275(9). Relying on *Davis*, 282 Or at 674, the trial court concluded that it is "clear there is no continuing tort in this case":

"In this case, Boardmaster alleges either one or two discrete 'wrongs' by Jackson County: directing Pacific Power to turn off the power (and associated misrepresentations and failures to research or rely on the proper law) in 2003 and then not directing Pacific Power to turn power back on again when Boardmaster asserted in 2003 the code violations had been remedied. Those actions, if wrongful, created the cause of action at the time they occurred. The fact that Jackson County did not, in Boardmaster's words, 'green light' the property does not convert the act of having the power turned off (and then not 'green lighting' it) into a continuing tort."

In sum, the trial court dismissed with prejudice plaintiffs' complaint as to all defendants.

On appeal, plaintiffs argue that the trial court erred in granting defendants' motions to dismiss because (1) neither Rule 14 nor Rule 11-1 absolves Pacific Power from liability and (2) a continuing tort was alleged and, thus, plaintiffs filed their claims within the statutory period. Defendants largely reiterate their contentions made before the trial court. For the reasons stated below, we agree with defendants.

■ We begin by determining whether the trial court properly dismissed plaintiffs' claims against Pacific Power. We review the grant of a motion to dismiss under ORCP

21 A(8) for failure to state ultimate facts sufficient to constitute a claim as a matter of law. *Granewich v. Harding*, 329 Or 47, 51, 985 P2d 788 (1999).

Plaintiffs contend that neither Rule 14 nor Rule 11-1 absolves Pacific Power from liability. Pacific Power responds that either tariff gave it authority to disconnect Board-Master's power and, for that reason, the trial court correctly granted its motion to dismiss under ORCP 21 A(8). Alternatively, Pacific Power argues that under the "right for the wrong reason" principle, the trial court correctly dismissed plaintiffs' complaint against it because it was barred by the applicable statute of limitations. For the reasons stated below, we agree with Pacific Power that Rule 14 precludes liability in this case and, thus, it is unnecessary to consider its alternative arguments.

Rule 14 states, in part:

**"Continuity of Electric Service and Interruption**

"Unless otherwise specified in a service agreement, electric service is intended to be continuously available. It is inherent, however, that there will at times be some degree of failure, interruption, suspension, curtailment or fluctuation. The Company does not guarantee constant or uninterrupted delivery of electric service and shall have no liability to its Consumers or any other persons for any interruption, suspension, curtailment or fluctuation in electric service or for any loss or damage caused thereby if such interruption, suspension, curtailment or fluctuation results from the following:

"(a)  *Causes beyond the Company's reasonable control* including, but not limited to, accident or casualty, fire, flood, drought, wind, action of the elements, court orders, litigation, breakdown of or damage to facilities of the Company or of third parties, acts of God, strikes or other labor disputes, civil, military or *governmental authority*, electrical disturbances originating on or transmitted through electrical systems with which the Company's system is interconnected and acts or omissions of third parties."[3]

---

[3] We note that the propriety of referring to a tariff as the basis for a dismissal under ORCP 21 A(8) may be debatable. *See, e.g., Adamson v. WorldCom Communications, Inc.*, 190 Or App 215, 221-22, 78 P3d 577 (2003), *rev den*, 336 Or

(Boldface in original; emphasis added.)

Plaintiffs contend that the phrase "[c]auses beyond the Company's reasonable control" precludes a conclusion that Rule 14 absolves Pacific Power from liability in this case. Specifically, plaintiffs argue that the June 13, 2003, letter from Jackson County—which ordered Pacific Power to disconnect the power on BoardMaster's property—was not a cause beyond Pacific Power's "reasonable control." Rather, plaintiffs assert that it was within Pacific Power's "reasonable control" to determine that (1) the statutes cited in the letter did not give Jackson County authority to order the disconnection or, alternatively, (2) the code violation no longer existed and disconnection was thus unwarranted. Pacific Power responds that it did not have a duty to challenge, disobey, or otherwise second-guess a county order. We agree with Pacific Power.

The plain language of Rule 14 is instructive. In order to limit Pacific Power's liability, Rule 14 requires that the cause for suspending service be "beyond the Company's reasonable control." Rule 14 then provides a nonexhaustive list of such causes, including "governmental authority." Thus, on its face, Rule 14 requires no more than that Pacific Power have acted in reliance on "governmental authority"—a "cause" that the tariff explicitly deems to be "beyond the Company's reasonable control"—to protect Pacific Power from liability for suspending plaintiffs' electric service.

Plaintiffs contend, nonetheless, that causes independent of Pacific Power's reliance on "governmental authority" led to disconnection of BoardMaster's power—causes

657 (2004) (to take judicial notice of a tariff—and, thus, consider it on review of an ORCP 21 motion to dismiss—would require a conclusion that tariffs, in effect, are laws). Plaintiffs, however, have never disputed the propriety of Pacific Power's reliance on Rule 14, or the trial court's consideration of that tariff, in the context of a motion to dismiss. Indeed, plaintiffs, by their own invocation of Rule 11-1 in opposing Pacific Power's motion to dismiss, at least implicitly endorsed such consideration. Given that posture, we consider the tariff here, but imply no view as to the general propriety of the consideration of a tariff in an ORCP 21 motion to dismiss. *See Pacific Coast Recovery Service, Inc. v. Johnston*, 219 Or App 570, 574 n 3, 184 P3d 1127 (2008) (considering evidentiary materials in reviewing grant of ORCP 21 A(8) motion to dismiss, noting that "[n]either party objected to the other's submission of evidentiary materials, and the trial court's consideration of those materials, in the context of a motion to dismiss").

that were within Pacific Power's "reasonable control." As support for that contention, plaintiffs invoke two Washington cases involving similar continuity-of-service provisions set forth in tariffs and the Seattle Municipal Code. *See National Union Ins. Co. v. Puget Power*, 94 Wash App 163, 972 P2d 481, *rev den*, 138 Wash 2d 1010, 989 P2d 1137 (1999) ("*National Union*"); *Citoli v. City of Seattle*, 115 Wash App 459, 468, 61 P3d 1165, 1170 (2002), *rev den*, 149 Wash 2d 1033, 75 P3d 968 (2003). The first of those cases is materially distinguishable, and the second corroborates Pacific Power's—not plaintiffs'—position here.

In *National Union*, the insurer plaintiff sued the defendant, Puget Sound Power & Light, to recover insurance proceeds paid to a third party for business losses during a windstorm-related electric service interruption. 94 Wash App at 166, 972 P2d at 482. The trial court granted summary judgment in favor of the defendant based on its argument that it was protected from liability by a "Continuity of Service" tariff[4] for any electric service interruption damages that resulted from circumstances beyond its reasonable control—such as windstorms—notwithstanding possible negligence in failing to utilize available backup equipment to serve its customers. *Id*. The Washington Court of Appeals held that the defendant was not absolved from liability for negligent failure to utilize available backup equipment, explaining:

> "Puget Power's continuity-of-service tariff does not absolve it from liability for service interruptions that it could have controlled or mitigated but for its unreasonable or unexplained failure to utilize available backup equipment in

---

[4] That continuity-of-service tariff provided, in part:

"CONTINUITY OF SERVICE—Electric service is inherently subject to interruption, suspension, curtailment and fluctuation. Neither the Company nor any other person or entity shall have any liability to any Customer or any other person or entity for any interruption, suspension, curtailment, or fluctuation in service or for any loss or damage caused thereby if such interruption, suspension, curtailment, or fluctuation results from any of the following:

"a. Causes beyond the Company's reasonable control including, but not limited to, fire, flood, drought, winds, acts of the elements[.]"

*National Union*, 94 Wash App at 168-69, 972 P2d at 483 (citing Puget Sound Energy, *General Rules and Provisions: Continuity of Service*) (brackets in *National Union*).

order to reestablish service with a minimum of delay while storm damage to regular equipment is being repaired."

94 Wash App at 175, 972 P2d at 486.

In *Citoli*, the Seattle Police Department ordered the defendants, Puget Sound Energy and Seattle City Light, to shut off utilities to the building where the plaintiff maintained his business when, during the World Trade Organization summit, a large group of protestors forced entry into the building and occupied the two floors above the plaintiff's business. 115 Wash App at 465, 61 P3d at 1169.

Puget Sound Energy contended that it was absolved from liability by a tariff, Puget Sound Energy Rule 14, which provides, in relevant part:

"The company, its employees and authorized representatives, or the customer will not be liable for losses or damages when such losses or damages result from any act, omission, or circumstances occasioned by or in consequence of * * * the binding order of any court or *governmental authority*, * * * and any other cause * * *, *if the cause is not reasonably within the control of the party* asserting force majeure and which by the exercise of due diligence such party is unable to prevent or overcome."

Puget Sound Energy, *Rules and Regulations: Force Majeure*, Rule 14 (Jan 6, 2000) (emphasis added).

The Washington Court of Appeals agreed, concluding that Puget Sound Energy's Rule 14 limited its liability for shutting off the gas when ordered to do so by "governmental authority." 115 Wash App at 483, 61 P3d at 1178. The court distinguished its holding in *National Union*—that the tariff absolved Puget Power from liability for circumstances beyond its control, but not from its alleged negligent failure to activate the backup generators—because nothing in Rule 14 or applicable administrative rules gave Puget Sound Energy the duty to monitor the building to ascertain when the last of the protestors left. 115 Wash App at 485-86, 61 P3d at 1179.

Seattle City Light similarly contended that it was protected from liability under the Seattle Municipal Code, SMC 21.49.110(U), which provides, in part:

"The Department shall not be liable for any loss, injury, or damage resulting from the interruption * * * of electric service from any cause beyond the control of the Department, including, but not limited to * * * governmental authority."

The Washington Court of Appeals agreed. 115 Wash App at 477, 61 P3d at 1175.

The court first explained that the code provision precluded contract liability because SMC 21.49.110(U)

"applies regardless of whether there was an 'emergency declared by appropriate authority.' Seattle City Light received a police order * * * to shut off electricity to the building. This was a circumstance beyond its control. Seattle City Light's contractual duty to provide electrical service does not impose upon it a duty to second-guess police orders based on the absence of a formal declaration of emergency * * *."

*Id.* The court similarly rejected the plaintiff's contention that Seattle City Light was liable in negligence because it was within the utility's control to selectively shut down power to the other floors, while maintaining power to the first floor, which housed the plaintiff's business:

"[The plaintiff] has raised an inference that power could have been shut down to the second and third floors of the building while maintaining power to the first floor. But it does not follow that Seattle City Light breached its statutory or regulatory duty by following the order to terminate power to the entire building or by failing to reconnect power to [the plaintiff's] business while protestors still occupied the building. As previously discussed, SMC 21.49.110(U) limits Seattle City Light's liability for interruption of electrical service due to circumstances beyond its control, including civil or governmental orders.

"* * * * *

"The police acted in response to an emergency situation and reasonably ordered that power to the building be shut down. This situation was beyond the control of Seattle City Light."

115 Wash App at 479-80, 61 P3d at 1176-77.

Finally, the court rejected the plaintiff's contention that both Puget Sound Energy and Seattle City Light were liable for wrongful interference with business relationships:

> "Puget Sound Energy and Seattle City Light shut off the utilities pursuant to police order. They did not have a duty to defy the order and turn the utilities back on, nor, in the case of Seattle City Light, to negotiate with the police regarding the possibility of restoring power to the first floor."

115 Wash App at 486, 61 P3d at 1180.

The Washington Court of Appeals' reasoning in *Citoli* is compelling, and we adopt it here. As in *Citoli*, the applicable tariff in this case, Rule 14, limits Pacific Power's liability for suspending electrical service if such suspension is solely attributed to causes beyond Pacific Power's reasonable control, including "governmental authority." In discontinuing service to BoardMaster's property, Pacific Power acted—as plaintiffs' complaint alleges—pursuant to Jackson County's June 13, 2003, directive. That order from Jackson County constituted "governmental authority" and, as such, was beyond Pacific Power's "reasonable control." The circumstances here are, thus, directly analogous to those in *Citoli* and materially different from those in *National Union*, where the utility's (non)utilization of available backup equipment was a matter within the utility's "reasonable control."[5]

Further, as in *Citoli*, Pacific Power, having discontinued service pursuant to governmental authority, had no duty to subsequently restore electrical service in violation of a still-extant governmental directive that had never been modified or revoked. Pacific Power had no duty either to independently assess whether the county's order was well founded, or to negotiate with the county regarding the possibility of restoring power to BoardMaster's property upon BoardMaster's assertion that it had cured the alleged code

---

[5] Plaintiffs assert that, under *Citoli* (and *National Union*), causes beyond a utility's "reasonable control," precluding liability, are limited to those arising in emergency situations. However, as noted, the court in *Citoli* concluded that liability was limited "regardless of whether there was an 'emergency declared by appropriate authority.'" 115 Wash App at 477, 61 P3d at 1175. Nothing in Rule 14 compels a contrary conclusion.

violation. Indeed, Pacific Power could arguably have been subject to civil liability if it had disobeyed Jackson County's order to disconnect service. *See* ORS 479.855(2)(a) (authorizing the Department of Consumer and Business Services to delegate power to counties to administer and enforce electrical safety provisions); ORS 479.820(2) (authorizing such counties to order disconnection of electrical service for failure to comply with safety standards); ORS 479.820(6) (prohibiting obstructing or interfering with such a county in the performance of any of the county's duties or exercise of its authority conferred in enforcing the safety provisions); ORS 479.995 (giving such counties discretion to impose a civil penalty for violating any of the safety provisions).

Plaintiffs counter that to so conclude is to immunize Pacific Power's unquestioning—in their view, mindless—adherence to governmental directives, including those that are baseless. That may be correct. But, as the trial court observed, plaintiffs' dispute is with the governmental authority —and not with the utility.

We thus conclude that, given the operation of Rule 14 in the circumstances alleged in plaintiffs' complaint, the trial court correctly granted Pacific Power's ORCP 21 A(8) motion to dismiss for failure to state ultimate facts sufficient to constitute a claim.

We next consider whether the trial court erred in dismissing plaintiffs' claims against defendants Jackson County and Kuntz (collectively "Jackson County") as being barred by the statute of limitations, ORS 30.275(9). We review the grant of a motion to dismiss under ORCP 21 A(9) to determine whether the pleading on its face shows that the action was not timely filed. ORCP 21 A; *Allen v. Lawrence*, 137 Or App 181, 186, 903 P2d 919 (1995), *rev den*, 322 Or 644 (1996).

ORS 30.275(9) provides:

"Except as provided in ORS 12.120, 12.135 and 659A.875, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300

*shall be commenced within two years after the alleged loss or injury."*

(Emphasis added.)

This action was filed on March 6, 2007. That was more than two years after BoardMaster's electrical service was discontinued, on August 5, 2003, pursuant to Jackson County's directive.

In determining whether plaintiffs' complaint alleges tortious conduct falling within the limitation period prescribed in ORS 30.275(9), it is essential, at the outset, to distinguish those matters that are properly before us from those that are not. That is, we must identify those contentions that are properly preserved for our review.

Before the trial court, plaintiffs, in response to Jackson County's motion to dismiss, argued that their claims were not time barred only because the allegations in their complaint—specifically those pertaining to Jackson County's purported repeated denial of plaintiffs' requests to approve restoration of electrical service to BoardMaster's property within the two-year period preceding March 6, 2007—sufficiently alleged a "continuing tort," so that this action was "commenced within two years after the alleged loss or injury." ORS 30.275(9). Plaintiffs' invocation of a "continuing tort" theory was, in turn, predicated on their understanding of *Davis* and *Holdner*. *See* 224 Or App at 539.

The trial court rejected that contention. In doing so, the court expressly noted that plaintiffs' opposition to Jackson County's motion "rests *exclusively* on Boardmaster's assertion that defendant[ ] Jackson County * * * committed a continuing tort * * *." (Emphasis added.) The trial court then explained why, under the analysis of *Davis* and *Holdner*, plaintiffs' pleading did not sufficiently allege a "continuing tort."

■ On appeal, plaintiffs reprise their "continuing tort" contention as to why their claims are not time barred under ORS 30.275(9). However, plaintiffs also—for the first time at oral argument on appeal—advanced a new, and qualitatively different, contention. Specifically, plaintiffs contended that, regardless of whether their pleadings alleged a continuing

tort that began with, and was predicated on, the original August 5, 2003, county-ordered termination of service, their claims are nonetheless timely because Jackson County's failure to act on plaintiffs' demands made within two years of the filing of the complaint were independently actionable. That is, plaintiffs now alternatively contend that their complaint alleges that they made at least some demands on Jackson County after March 6, 2005, and that the county unreasonably failed to direct restoration of service—and those allegations plead, at least, *discrete instances* of actionable conduct within the two-year limitations period.

That belated contention is unpreserved for our review. It is qualitatively different from plaintiffs' sole contention before the trial court—and, indeed, on appeal until oral argument. To entertain such a qualitatively different contention in that posture would subvert the fundamental prudential purposes of our preservation requirements. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) ("[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."); *State v. Taylor*, 198 Or App 460, 469, 108 P3d 682, *rev den*, 339 Or 66 (2005) ("[T]he appealing party's statements before the trial court must have alerted the trial judge and opposing counsel to the substance of the position that is advanced on appeal."); *cf. State v. Rumler*, 199 Or App 32, 41, 110 P3d 115 (2005) (describing *Wyatt*-driven preservation inquiry: "If we were to reverse based on [appellant's] argument, would the trial judge feel 'blindsided' by our ruling?").[6] We thus, properly, limit our consideration to plaintiffs' preserved "continuing tort" contention.

In *Davis*, the Supreme Court explained the "continuing tort" doctrine: "[A]t the heart of the continuing tort idea is the concept that recovery is for the cumulative effect of

---

[6] *Accord Clinical Research Institute v. Kemper Ins. Co.*, 191 Or App 595, 607-08, 84 P3d 147 (2004) (concluding that the plaintiff failed to preserve a contention advanced for the first time in its reply brief on appeal); *State v. Avalos-Izquierdo*, 175 Or App 229, 233 n 2, 27 P3d 528 (2001), *rev den*, 334 Or 190 (2002) (concluding that the defendant's contention, raised for the first time in response to a question at oral argument on appeal, was not preserved).

wrongful behavior, not for discrete elements of that conduct." 282 Or at 671-72. There, the plaintiff brought an action in August 1976 against her former husband, alleging that he had engaged in an intentional course of conduct designed to inflict emotional stress and mental anguish. *Id.* at 669-70. The conduct complained of consisted of 10 incidents—two in 1973 and at least two others before August 1974. *Id.* at 669. The defendant contended in the trial court that any consideration of those four incidents was barred by the two-year statute of limitations, ORS 12.110(1). *Id.* at 671. The trial court struck that defense on the ground that the plaintiff's pleading sufficiently alleged a "continuing tort" that consisted of all 10 instances, and the jury returned a verdict for the plaintiff. *Id.* at 669, 671.

The Supreme Court reversed. *Id.* at 675. The court concluded that each act alleged was "separately actionable" because each "caused harm." *Id.* at 672. The court noted that, unlike a continuing tort situation, where "the harm complained of * * * [reaches] the level of actionability only at the end of the series of" actions, the defendant's conduct in *Davis* "repeatedly reached the level of actionability." *Id.* The Supreme Court further explained:

> "Designating a series of discrete acts, even if connected in design or intent, a 'continuing tort' ought not to be a rationale by which the statute of limitations policy can be avoided, for surely the cause of action 'accrued' at some time * * *; or, to put it another way, a cause of action does not reaccrue every time another distress is inflicted."

*Id.* at 674 (citations omitted). The court thus held that, because "a separate cause of action certainly could have been asserted after each of [the] defendant's * * * acts," the plaintiff "was not entitled to revive the actionability by designating them merely as elements of a single tort." *Id.* at 673-75. *Accord Jeffries v. Mills*, 165 Or App 103, 116, 995 P2d 1180 (2000) ("An individual specification of negligence or other tortious conduct, although set forth as part of a single cause of action, may be barred by the applicable statute of limitations if it alleges a harm that would be separately actionable.").

*Griffin v. Tri-Met*, 112 Or App 575, 577, 831 P2d 42 (1992), *aff'd in part and rev'd in part on other grounds*, 318 Or

500 (1994), in contrast, involved a paradigmatic continuing tort. There, the plaintiff, a Tri-Met dispatcher, asserted a claim for unlawful HIV-based discrimination against Tri-Met. The complaint alleged a course of conduct, including events that occurred more than 180 days before the plaintiff gave Tri-Met notice of claim, as prescribed in ORS 30.260 to 30.300. 112 Or App at 579. Tri-Met successfully moved to strike allegations in the complaint pertaining to those events, arguing that any recovery based on that conduct was time barred. *Id.* However, the trial court denied Tri-Met's motion to exclude evidence of those events. *Id.* at 579-80. The jury returned a verdict for the plaintiff. *Id.* at 577.

On appeal, Tri-Met assigned error to the trial court's denial of its motion to exclude evidence of conduct occurring more than 180 days before the tort claim notice was given, and the plaintiff cross-assigned error to the court's order striking the allegations pertaining to that conduct. *Id.* at 580. Specifically, the plaintiff contended that those allegations should not have been stricken "because they were part of a continuing tort." *Id.* at 581. We agreed with the plaintiff with respect to the cross-assignment, and, in so holding, distinguished *Davis*:

> "In *Davis*, the defendant's physical and mental abuse of the plaintiff were continuous in the sense that, all together, the abuse was a course of conduct. However, the court held that, because the defendant's acts were discrete and egregious in nature, each abusive act was separately actionable and not merely an element of a single tort. Here, the October and November, 1987 acts, although separate incidents, are not the type of discrete, permanent events that would likely support separate actions for wrongful discrimination. Instead, they can be reasonably construed as elements of a systematic pattern of conduct, aimed at causing plaintiff's eventual termination. The allegations should not have been stricken."

*Griffin*, 112 Or App at 581-82.

This case is akin to *Davis*, not *Griffin*. Here, most of plaintiffs' allegations against Jackson County arose out of the June 13, 2003, letter, which Pacific Power relied on to disconnect the electricity to BoardMaster's property on or about

August 5, 2003. Sending that letter was a discrete, harm-producing act and, thus, was separately actionable. Accordingly, plaintiffs' causes of action based on the June 13, 2003, letter accrued when plaintiffs knew that Jackson County's order caused harm, *viz.*, when Pacific Power disconnected BoardMaster's power on or about August 5, 2003. *See Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 162, 742 P2d 1176 (1987) (statute of limitations begins to run when plaintiffs knew or should have known that they had suffered a loss caused by defendant's wrongful conduct). Consequently, because plaintiffs did not file their complaint within two years of that date, those allegations are barred by the statute of limitations. ORS 30.275(9).

Plaintiffs argue, nonetheless, that some allegations in their complaint support their contention that they alleged a continuing tort. In particular, plaintiffs point to the following allegations in their complaint:

"Since [August 5, 2003], plaintiff BoardMaster has continued requests for electrical power to be restored to the mill, all requests which have been denied * * *.

"* * * * *

"All named defendants have been contacted several times over the past two years to have the utility restored and to date, all named defendants continue to deprive plaintiffs of electrical power to the lumber mill."[7]

Plaintiffs rely on *Holdner* to support that argument. Again, that reliance is misplaced. In *Holdner*, the defendants had performed certain road repair and maintenance activities, which caused water to drain onto the plaintiff's property in 1974 or early 1975. 51 Or App at 608. Thereafter, and until sometime in 1977, the plaintiff had unsuccessfully attempted to persuade the defendants to correct the problem. *Id.* In January 1978, the plaintiff brought an action, alleging that the defendants had been negligent, both in maintaining and

---

[7] Similar allegations in plaintiffs' complaint, which they do not specifically invoke, include the following: Kuntz negligently failed to request Pacific Power to return power to the lumber mill during the past two years; Jackson County negligently failed to have its employees request Pacific Power to restore power to the lumber mill; and plaintiffs have endured years of pain and suffering in trying to get the power restored.

repairing the road, and in their ongoing upkeep (or lack of upkeep) of adjacent ditches and culverts. *Id.* at 608-09. The trial court concluded that, as a matter of law, plaintiff's claims were time barred either by the statute of limitations or by failure to give timely notice of claim, and entered judgment for the defendants. *Id.* at 607.

On appeal, we concluded that the road repairs were "clearly discrete acts which ended more than two years before plaintiff brought his action * * *." *Id.* at 612. Conversely, we concluded that the ongoing negligent upkeep of the ditches and culverts "would appear to constitute a 'continuing tort' * * *." *Id.* at 612-13. We thus held that the plaintiff's action was timely, insofar as it alleged a continuing tort of negligent upkeep of the ditches and culverts, but untimely as to any discrete acts of road repairs occurring before the two-year statutory period. *Id.* at 613.

Plaintiffs contend that this case is similar to *Holdner* because, like the plaintiff in *Holdner*, plaintiffs assert that they unsuccessfully attempted to persuade Jackson County to correct the problem. We disagree. The refusal of the defendant county and its agents in *Holdner* to remedy the alleged negligent road repair did not transform the claim into a continuing tort or otherwise preserve a claim for negligent repair of the road beyond the two-year statute of limitations. Rather, the only continuing tort that existed in *Holdner*—the negligent upkeep of ditches and culverts—derived from the county's continuing mandatory duty to maintain those portions of the roads.

Similarly, the refusal of Jackson County to remedy its alleged negligent order to disconnect BoardMaster's power does not transform plaintiffs' claims against it into a continuing tort or otherwise preserve plaintiffs' claims based on that action beyond the two-year statute of limitations. Failure to correct allegedly negligent conduct does not turn a discrete and separately actionable act—ordering Pacific Power to disconnect BoardMaster's power—into a continuing tort.

■ Nonetheless, plaintiffs assert that a continuing tort exists because, due to Jackson County's failure to order

Pacific Power to restore power, harm from the county-ordered termination continued unabated, with consequent ever-increasing damages to plaintiffs. That contention confuses continuing *harm* with continuing *tortious conduct*. Although the latter may, under certain circumstances, constitute a continuing tort, the former, standing alone, cannot. *See generally Industrial Plating Co. v. North*, 175 Or 351, 354-56, 153 P2d 835 (1944) (cause of action complete at time of breach of duty despite the fact that consequential damages continued to increase).

**5.** Finally, any continuing duty that a defendant may have to rectify its alleged negligence does not allow a plaintiff to avoid the statute of limitations when, as here, the defendant takes no further action. *See Josephs v. Burns & Bear*, 260 Or 493, 501-02, 491 P2d 203 (1971), *overruled in part on other grounds by Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001) (absent an "active, continuous relationship between plaintiff and defendant," the legislature "did not intend the statute [of ultimate repose] to be circumvented by allegations that subsequent to the fundamental wrong, a continuing duty existed to rectify the results of such wrong"); *Adams v. Oregon State Police*, 40 Or App 721, 727, 596 P2d 588 (1979), *rev'd on other grounds*, 289 Or 233, 611 P2d 1153 (1980) (applying *Josephs*: "[A]ny continuing duty of defendants to rectify the wrong, in the absence of an active, continuous relationship between the parties, would not permit plaintiffs to avoid the limitations period.").[8]

In *Rutter v. Neuman*, 188 Or App 128, 136, 71 P3d 76 (2003) (quoting *Cavan v. General Motors*, 280 Or 455, 458, 571 P2d 1249 (1977)), we explained that the "active, continuous relationship" referred to in *Josephs* is one that "puts a plaintiff in a position in which he or she is not able 'to recognize fairly the existence of a cause of action until the relationship is terminated' "; *e.g.*, a doctor-patient relationship. *See id.* at 136-37 (holding that there was no evidence of an "active, continuous relationship" between the plaintiffs and

---

[8] *Cf. Little v. Wimmer*, 303 Or 580, 585, 739 P2d 564 (1987) (allegations of failure to remedy and failure to warn of dangerous condition not barred by statute of limitations when not disputed that the state had continuing mandatory duty to maintain the intersection).

the city defendant because "nothing in the record demonstrate[d] the existence of the sort of relationship of trust and confidence with the defendant that the court said was necessary in *Cavan*"). Plaintiffs do not allege a relationship of trust and confidence with Jackson County that prevented them from being able to recognize fairly the existence of a cause of action. Accordingly, under *Josephs*, Jackson County had no duty to correct any alleged wrong.

The trial court correctly dismissed plaintiffs' complaint against Jackson County and Kuntz.

Affirmed.